## JESSE FRENCH PIANO & ORGAN CO. *v.* CARDWELL.

1. The contract involved in the present case created a general agency for the sale of musical instruments ; and it was within the scope of such an agency to place an instrument on trial with another, taking from him a portion of the purchase-price and allowing him the privilege at the expiration of a fixed time of either paying the balance of the purchase-price and retaining the instrument, or of returning the same and having the money advanced in part payment refunded to him.

2. In the trial of a suit brought by the employer of such an agent to recover possession of an instrument which had been placed by the agent with the defendant under an agreement of the nature above indicated, it was not error to refuse to strike an answer of the defendant setting forth the agreement, alleging that, at the expiration of the time therein fixed, demand had been made upon the agent to retake possession of the instrument and refund the money advanced, and that he had failed to comply with the agreement, and claiming the right to retain possession of the property until the money advanced as part payment of the purchase-price had been refunded.

3. Where in such a case the plaintiff had given a bond conditioned to have the property forthcoming to answer the judgment, and a general verdict was returned in favor of the defendant, it was not error to enter up a judgment on this verdict, that the plaintiff restore the property to the defendant within a given time, or in default thereof that the defendant recover of the plaintiff and the security on the bond the amount which had been advanced by the defendant as part payment of the purchase-price. Such a judgment followed the pleadings, and was in consonance with the proper practice in such cases.

4. The evidence authorized the verdict. The requests to charge, so far as legal and pertinent, were covered by the general charge. The charge, taken as a whole, fairly submitted to the jury the issues involved, and if there was any error in any portion of the charge, it was not of a character requiring the granting of a new trial.

Argued November 23, — Decided December 11, 1901.

Trover. Before Judge Willis. City court of Columbus. July 27, 1901.

*Hatcher & Carson*, for plaintiff.

*J. H. Martin* and *A. W. Cozart*, for defendant.

Cobb, J. The Jesse French Piano and Organ Company brought an action of trover against Cardwell, to recover possession of a piano. At the trial a verdict was rendered in favor of the defendant. The case is here upon a bill of exceptions filed by the plaintiff, assigning error upon certain rulings made by the court during the trial, and upon the refusal to grant a new trial.

1. It appeared from the evidence that the defendant was in possession of the piano under an arrangement made with one Rogers; and in order to determine whether the defendant had a right to the possession of the property as against the plaintiff, it becomes necessary to ascertain what was the relation existing between Rogers and the plaintiff. That relationship is to be determined from an examination of a written agreement entered into between Rogers and the plaintiff, which in substance provided that Rogers was to act as salesman of the plaintiff and to obey its instructions, rules, and regulations, as he might be directed, to devote his time and attention to its business, and to pay all the expenses incurred in the transaction of its business. If any instruments were not sold within four months after the date of invoices, Rogers was to pay six per cent. of the value of such instruments, less commission. All instruments received from the plaintiff were to remain its property until sold and the sale ratified by the company, and not be liable for any claim or expense as against the company. Rogers was to return free of expense, or deliver to the company's order, at the termination of the agreement, or at any time as it might require, all consigned goods not then sold, and to pay for any damage that may have accrued to such instruments by his act or neglect. He was to repossess and deliver to the company any instrument it might direct or resell, and receive compensation the same as on new

instruments. He was to receive for his services a percentage, which was set forth in the agreement, varying according to the character and value of the instrument; the commissions which were to be paid being set forth in the agreement. The company was to have the right, whenever it thought proper, to reject any sale made by Rogers, and to take back any instrument sold by him without consulting him, and cancel all commissions he might have had on the sale. The agreement was to be terminated at the pleasure of either party. Construing this contract as a whole, it created the relation of principal and agent between the plaintiff and Rogers, and he became thereunder the general agent of the plaintiff to sell pianos on its behalf. See, in this connection, *Foster* v. *Jones*, 78 *Ga.* 156; Butler *v.* Maples, 9 Wall. 766. While under the contract the plaintiff might have a right to refuse to ratify any sale made by Rogers, if Rogers had made with a party either a completed sale or an executory contract of sale, as he was authorized to do under the agreement, certainly the plaintiff could not by a refusal to ratify the contract, or by a repudiation of the same, recover the possession of the instrument, without at least paying back to the party to whom the instrument had been sold, or with whom the executory contract of sale had been entered into, any amount which had been paid Rogers on account of the transaction. It was argued for the plaintiff in error that the contract between the plaintiff and Rogers was a mere consignment contract, and that Rogers was really a bailee of the piano, with authority to sell for cash or on credit, and in the latter instance only to such persons as the plaintiff might approve. We do not think this construction of the contract the correct one. The contract created Rogers a general agent to sell the property of the plaintiff in his possession, and under this authority he could select the purchaser and agree on the terms of sale, which were to be either for cash or on credit, and deliver the property either in completion of the sale, or on trial looking to a completion of the sale in the future, and receive money in advance to be applied in part payment of the purchase-money if the sale was afterwards completed.

2. One of the assignments of error made in the bill of exceptions complains of the refusal of the court to strike the amended answer of the defendant. This answer set up that Rogers had proposed to sell to defendant a piano at a stated price, and to place the same

in the house of the defendant on trial for thirty days, Rogers stating to the defendant that he had a number of pianos in the depot upon which the freight was due.    He then asked the defendant for $100, saying that he wanted it to pay freight with, and that in the event, after a trial of thirty days, the defendant was satisfied with the piano, the $100 was to go as part payment, and if he was not satisfied, the money was to be refunded.    With this understanding the defendant took the piano on trial and advanced $100 as a part of the purchase-money, which was to be returned if the sale was not perfected.    Rogers was in charge of the business of plaintiff, and represented to the defendant that he was the general manager of the plaintiff.    The business had been advertised as the business of the Jesse French Piano and Organ Company.    There were signs to this effect over the door of the house where the business was carried on, and the defendant in advancing the $100 did so upon the faith of the fact that the plaintiff was the owner of the business and that Rogers had authority to represent it.    At the expiration of the thirty days defendant told Rogers that he had decided not to take the piano, and demanded the return of the $100.    Rogers promised several times that he would remove the piano, but never did so.    Defendant had always been ready to deliver the piano upon the payment of the $100.    There was a prayer in the answer, to the effect that a decree be molded requiring plaintiff to pay defendant the sum of $100 with interest thereon.    The court struck the prayer, but overruled the demurrer so far as the allegations of the amended answer were concerned.    The suit being in a city court, of course the prayer for a molded decree was properly stricken, for the reason that a city court could not grant any affirmative equitable relief.    While in such courts equitable pleas which set up matters merely defensive are allowed, there is no power in such courts to mold a decree granting affirmative equitable relief.    It was not improper to refuse to strike the answer, even if it could be construed to set up any equitable defense.    Would not the facts set up in the answer be a sufficient defense at law to a suit for the possession of personal property ?    If Rogers had a right to make the contract which the answer set up, and under the allegations of the answer he undoubtedly had this right in behalf of the plaintiff, then the defendant, upon his declination to complete the sale after the expiration of thirty days, had a right to demand that the status

be restored to what it was at the time that the property was delivered into his possession; and upon the failure on the part of the plaintiff or its agent Rogers to do this, the defendant could hold the property in his possession until the amount due him was refunded with interest. In other words, the answer set up a state of facts which showed that the defendant was lawfully in possession of the property, and that this possession could not be interfered with except upon the plaintiff's compliance with the conditions of the agreement which had been made by its agent. While the plaintiff was the absolute owner of the property, the defendant, under the agreement with Rogers, had a qualified property in the piano, which he could assert against the plaintiff until it had complied with the terms of the contract made through its agent.

3. There was a general verdict for the defendant, and upon this verdict the court entered the following judgment: "It appearing to the court by the plea of defendant that he admits title to the property sued for being in the plaintiff, subject to his right to have refunded to him the sum of one hundred dollars with interest by the plaintiff before the plaintiff is entitled to the possession of the said piano; and it appearing to the court that the sheriff seized said property at the instance of the plaintiff upon their bail proceedings and turned the same over to the plaintiff, it having entered into a bond in the sum of eight hundred dollars, with Smith Furniture Company as security, conditioned that the said Jesse French Piano & Organ Company shall produce or cause to be produced and forthcoming the said piano to answer the judgment that may be made in said case, and shall well and truly pay the eventual condemnation-money, whatever it may be, said bond dated February 14, 1900: It is therefore considered and adjudged by the court that the plaintiff restore to the defendant said piano within two days; in default defendant do recover of the plaintiff, the Jesse French Piano & Organ Company as principal, and the Smith Furniture Company as security, the sum of one hundred dollars as principal, nine dollars and ninety-five cents interest (being interest from the 14th of February, 1900), and any further interest at 7 per cent. per annum, and costs to be taxed by the clerk." The plaintiff objected to the court entering this judgment, for the reason that the defendant admitted in his answer that the title to the piano was in the plaintiff, and for this reason the verdict was void; and upon the

further ground that the judgment was not authorized by the verdict, construed in the light of the pleadings.    The entering of the judgment over these objections is assigned as error in the bill of exceptions.    Verdicts are to be given a reasonable intendment, and are to be construed in the light of the pleadings, and are never to be held void except from necessity.    Applying this rule to the verdict in the present case, a general finding in favor of the defendant can not be construed in any other way than a finding by the jury in favor of either the defendant's original plea, or its amended plea. The original plea amounted to a general denial of every allegation in the plaintiff's petition.    If the verdict be construed as a finding in favor of the defendant on this plea, then the defendant would be entitled to a general judgment vesting the property in him, and the judgment as rendered is more favorable to the plaintiff than it would have a right to ask.    If the verdict be construed as being founded upon the amended plea alone, or upon the plea as a whole, taking the facts alleged in the amended plea as to that extent qualifying and withdrawing the denials in the original plea, then the judgment rendered, in the light of the fact that when the property was seized on bail process it was delivered to the plaintiff upon his executing the bond required by law, follows the pleadings and is in accordance with the practice in such cases.    The finding of the jury in effect meant that the defendant was entitled to hold the piano until the $100 was refunded to him, and upon this verdict the court had a right to enter a judgment that the piano be delivered back to the defendant, to be held by him as security for the payment of the $100, and, upon the failure so to deliver within a given time, the defendant have judgment for $100 with interest against the plaintiff and the security on the bond given to have the property forthcoming to answer the judgment to be rendered in the case.    The status of the parties as fixed by the judgment is simply this: The absolute title to the property is in the plaintiff.    The defendant has a qualified property therein, which he can assert by retaining possession of the same until the $100 with interest is refunded; and plaintiff having obtained possession of the piano by virtue of the bond executed by it, the defendant was entitled to retake possession of the property, to be held until the money due him was refunded, or, in lieu of this, to a judgment on the bond which represented the property.    While the case is one that is pe-

culiar in some of its features, the judgment entered is one which is legally possible under the principles governing actions for the recovery of personal property under the code of this State. In such actions the plaintiff or the defendant, whichever one obtains a verdict, is entitled to a judgment for the property, and in the event a bond has been given by the losing party to have the property forthcoming, the prevailing party is entitled to treat the bond as standing in lieu of the property, and to be given the same rights as he would have had if the property had been produced.

4. The case upon its merits turned upon an issue of fact about which the evidence was conflicting. If the evidence for the defendant was credited by the jury, he was entitled to a finding in his favor on his amended plea. If the evidence in behalf of the plaintiff was to be believed, it was entitled to an unconditional verdict for the recovery of the property. The jury determined this issue in favor of the defendant. The motion for a new trial contains many grounds, assigning error upon various portions of the charge, and upon refusals of the court to charge certain requests. The charge as a whole fairly submitted the case to the jury; and if any errors were committed therein, they were not of such a character as to require the granting of a new trial. The requests which were refused were, so far as legal and pertinent, covered by the general charge. The discretion of the trial judge in refusing to grant a new trial will not be controlled.

*Judgment affirmed. All the Justices concurring.*