24610.  GARRISON MOTOR COMPANY *v.* PARRISH.

DECIDED MARCH 3, 1936.

*J. F. Kemp, H. H. Merry,* for plaintiff in error.
*Hay & Gainey,* contra.

BROYLES, C. J.  Garrison Motor Company brought suit against H. A. Parrish for $78 and interest thereon, alleged to be due on a contract for the sale of a used automobile, the contract, which was made a part of the petition, reciting that the purchase-price was $284, payable $81 on or before delivery and the balance of $203 payable in monthly installments of $17.  The defendant answered, that he made a verbal agreement with the plaintiff to pay $225, and the plaintiff agreed to take the defendant's old automobile at a valuation of $65 as part payment on the purchase-price; that the plaintiff undertook to have the verbal agreement reduced to writing, and the defendant signed the writing prepared by the plaintiff

on the plaintiff's representation that the writing expressed the agreement verbally made; that the defendant is unable to read and write, and the written agreement was never read over to him; that the writing does not express the agreement; that "defendant was induced to enter into the said agreement, and did enter into the same, on plaintiff's false and fraudulent representation that the car then being purchased by defendant was in good, first-class condition, notwithstanding it was a used car," that "the said representations were so made with the intent and purpose to deceive this defendant and induce him to enter into said agreement, and he was thereby deceived and induced to enter into said agreement;" that the brakes on the car were wholly useless, and the motor "made an unusually loud, grinding, and obnoxious noise;" that the defects were latent and unknown to the defendant at the time of the trade, but were known to the plaintiff; that upon attempting to use the car the defendant discovered the latent defects and took the car back to the plaintiff at three different times, in an effort to get the plaintiff to remove the defects; that upon the plaintiff's failure to remove the defects the defendant elected to rescind the contract of purchase and sale, and did rescind by restoring as far as possible the original status of the parties by returning to the plaintiff the automobile which he had received from the plaintiff and leaving the keys thereto with the plaintiff; "that the contract sued on was absolutely void because of plaintiff's fraud in procuring the same to be executed;" that the old car which plaintiff accepted as part payment under the contract had been sold by plaintiff, and that its value was approximately $81, for which amount with interest he prayed judgment. The jury found for the defendant $65 plus interest. The plaintiff made a motion for new trial, and assigns error on the overruling of its motion.

On the trial George Mueller, a salesman for the plaintiff company, testified that $284 was the purchase-price of the car sold, and $81 was allowed the defendant for his old car; that he conducted all the negotiations with the defendant; that he did not represent the car to be in first-class condition or in as good condition as a second-hand car could be put in; that he did not make any false representations to the defendant; that Mr. Garrison refused to take the car back, and Mr. Parrish said he would not keep it, and left the car and keys with Mr. Garrison, the president of the plain-

tiff company. Garrison testified 'that when the defendant would neither keep the car nor pay his note, the company advertised the car and sold it, and it was bought in by T. V. Carter for $125, which amount was credited on the note of the defendant, leaving a balance of $78 for which suit was brought; that he did not know whether the contract was read over to Parrish or not; and that defendant's "old car which we had taken in was worth about $25." C. E. Williams, bookkeeper for the plaintiff company, testified: "I made out the note which H. A. Parrish signed. . . It was filled in at the time that he signed it. Nothing was filled in after he signed the note. I do not know whether the paper was read over to him or not. I did not hear it read to him. It was not read to him in my presence." The defendant testified that "the price they asked me for the car they were selling me was $225, and they were to allow me $65 for my old car. . . They fixed the paper, and I signed it. I can not read it. They did not read it over to me. . . If the note calls for an amount different from that I have just mentioned, it does not correctly set out the trade which was made. In the negotiation preceding the agreement on the terms and the signing of the note, Mr. Mueller and Mr. Garrison told me that the car I was buying was in first-class condition; that it was in as good condition as a second-hand car could be put, and the company guaranteed it to be such. I relied on these representations made by Mr. Mueller, believing them to be true. He assured me that the car was in first-class condition. If he had not told me this. I would not have been willing to buy the car. . . The car was not in the condition it was represented by Mr. Mueller to be. The brakes did not work, and I came very near having a serious collision, on the following day, with a car that was coming down the street. . . This was the day after I purchased the car. The trouble was with the brakes on the car. They were worn out or were no good. They did not work. There was also a loud and grinding noise in the engine. I could not tell what was the cause of this noise." He testified further that two or three days after he bought the car he carried it back to the plaintiff company and told them about the trouble he was having with it, and told them "they should put it in the condition they represented it to be in;" that he took it back four times, and when they refused to fix it he told them he would not keep the car, and

left it and the keys with the plaintiff; that "my old car which I traded in was worth $65." J. E. Chastain testified: "I got in the car by myself and drove down the paved highway a mile or such a matter, and drove back. There was a loud grinding noise in the engine, and the brakes were not working properly. I came back to Mr. Parrish's house and left the car there, but I did not tell him what I thought of it." T. V. Carter testified that when the car was sold at the court-house by the plaintiff he bought it in for $125; that "it had no emergency brakes, and the other brakes were not working properly. There was also a loud grinding noise in the engine, and one wheel was slinging oil. . . It was in bad condition."

Ground 4 of the motion for new trial alleges error on the following charge to the jury: "I charge you that under the law, before the plaintiff can recover in the case, he must show you by the preponderance of the evidence that which he alleges in his suit and upon which he bases his right to recover. A preponderance of evidence does not mean that you will find it to be so because of the greater number of witnesses, but on which side and in which way does the evidence strongly lead you. Which way does it strongly predominate? Which is the stronger side? Briefly, asserting the fact places the burden on him to prove that fact with reasonable certainty; and that is what we know as a preponderance of evidence in the case." Movant insists that under this charge the jury must be "strongly led" by the evidence before they could consider that there was a preponderance of evidence in favor of the plaintiff. Reference to the charge shows that the court did not say "in which way does the evidence strongly lead you," as stated in the ground of the motion; but the court did properly say "in which way does the evidence lead you." Therefore this portion of the excerpt is not error; nor is that portion which instructs the jury to determine "which is the stronger side," as this is but another way of charging in reference to "the superior weight of evidence," as provided for in the Code. However, the expression, "which way does it strongly predominate," is erroneous, as the degree of proof required by such instruction is greater than that provided by the statute.

Ground 5 of the motion alleges error because the court charged the jury, in part, as follows: "Now if you believe by a prepond-

erance of evidence . . that the Garrison Motor Company did not undertake to make good a promise made to keep that car in condition," etc. There was no contention that the plaintiff promised to *keep the car in condition*. The only issue in this regard was the condition of the car at the time the defendant bought it and the failure of the plaintiff to put it in the condition it was represented to be in at the time it was bought. This charge was error and misleading to the jury, especially so in view of the evidence that the defendant kept the car for more than a month and carried it back to the plaintiff several times during this period for repairs, and that the plaintiff failed to repair it. Some dealers do guarantee to keep certain kinds of cars in condition for a limited period of time; and the jury may have concluded from the evidence and this charge that the plaintiff in the instant case failed "to make good a promise made to keep that car in condition."

Ground 6 alleges that the court erred in charging Code section 20-903, followed with the charge: "You look to the evidence in this case and see if there was a concurrent condition to be performed upon the part of the Garrison Motor Company in this instance. If it was understood and agreed between them that this car should be in condition, and if they represented it to be,—and you will determine from the evidence in this case whether it was." Under the pleadings and the evidence this charge was authorized, and the jury was authorized to find that the plaintiff defrauded the defendant and failed to perform its part of the contract, thus authorizing the defendant to rescind.

Ground 7 alleges that the court erred in charging the jury that if they found certain stated contentions of the defendant to be true, "he would be entitled to a judgment for $65, plus interest from whatever date you find the car was turned back;" and ground 8 complains of quoted excerpts from the charge, a part of which is as follows: "In any event you can not find a general verdict for the defendant in this case." Movant insists, the suit being in a city court and the plea being an "equitable defense," that "it was error for the court to instruct the jury that [the defendant] had a right to an affirmative recovery over against the plaintiff." The defendant alleged that he "was induced to enter into the said agreement, and did enter into the same, on the plaintiff's false and fraudulent representations," and "that the contract declared on

was absolutely void because of plaintiff's fraud in procuring the same to be executed." The defendant's testimony tended to support these allegations; and though there was contradictory testimony, the jury rendered a verdict in his favor for $65 plus interest. The instructions complained of in these grounds were erroneous. "A city court has no jurisdiction to grant affirmative equitable relief; nor can such jurisdiction be conferred upon it by consent of the parties." *Ragan* v. *Standard Scale Co.*, 123 *Ga.* 14 (50 S. E. 951). "While *a city court has no jurisdiction to grant affirmative equitable relief*, it may entertain jurisdiction of an equitable plea purely defensive in its nature, which upon being sustained would result simply in a *general verdict* in favor of the defendant." (Italics ours.) *House* v. *Oliver*, 123 *Ga.* 784 (51 S. E. 722). Although the defendant in an action brought in a city court might, in that court, avail himself of an equitable defense which would defeat a recovery by the plaintiff, yet, in order to enable him to obtain complete affirmative equitable relief as to all matters involved in the litigation between himself and the plaintiff growing directly out of that action, it was essential to invoke the powers of a court exercising full equitable jurisdiction, and which *alone* could constitutionally grant relief of this character. *National Bank of Athens* v. *Carlton*, 96 *Ga.* 469 (3) (23 S. E. 388). See also *English* v. *Thorn*, 96 *Ga.* 557, 560 (23 S. E. 843); *Gentle* v. *Atlas Savings Asso.*, 105 *Ga.* 406 (51 S. E. 544); *Jesse French Piano &c. Co.* v. *Cardwell*, 114 *Ga.* 340, 343 (40 S. E. 292); *Pound* v. *Williams*, 119 *Ga.* 904, 906 (47 S. E. 218); *Burnett* v. *Davis*, 124 *Ga.* 541, 544 (52 S. E. 927); *House* v. *Martin*, 125 *Ga.* 642, 645 (54 S. E. 735); *Butler* v. *Holmes*, 128 *Ga.* 333, 336 (57 S. E. 715). The court erred in overruling the motion for new trial. *Judgment reversed. MacIntyre and Guerry, JJ., concur.*