## C. W. BESSENT v. HARRIS & HOWELL.

Where a factor receives goods with instructions to ship them to a certain port, and makes an advance upon them; nothing more appearing, it is not to be taken that he engages (as a common carrier) to ship them thither *at all hazards;* but only, *if by ordinary diligence he can.*

A factor residing at W., who, being under instructions to ship goods from that place to A., ships them to B., renders himself liable therefor; but if his principal, upon being informed of such breach of instructions, ratifies the act, expressly or impliedly, he thereby waives his right to complain of it.

If there were no such ratification, the measure of damages (in case, that, using ordinary diligence, the factor could not ship to A.,) is the difference between the prices at W., and at B., not such difference at A., and at B.

Factors have a right to definite instructions from their principals, and in case instructions are obscure or contradictory, they may exercise their honest and diligent discretion upon the subject matter, without becoming liable.

Whether a factor is entitled to a discount for advances made to his principal, is ordinarily a question of fact to be decided by a jury.

ASSUMPSIT, tried before *Cloud, J.,* at Spring Term 1869 of the Superior Court of ROWAN.

The facts appear sufficiently stated in the Opinion.

Verdict for the plaintiff; Rule for a new trial; Rule discharged; Judgment, and Appeal.

*Boyden & Bailey,* and *Person,* for the appellants.
*Wilson* and *Bragg, contra.*

RODMAN, J. This action was commenced on the 12th of March 1867, by writ returnable to the Superior Court of Davie County. On the trial the jury found for the plaintiff; judgment was given accordingly, and the defendants appealed.

From the statement of the case made by the Judge, it appears that the plaintiff declared in assumpsit: in one count, that the defendants were factors residing at Wilmington, and on March 1st 1866 received from the plaintiff certain tobacco, and undertook to carry the same to New Orleans, and sell it for the benefit of the plaintiff; which undertaking the defendants refused to perform, but on the contrary shipped the tobacco to New York, and there sold the same, to the damage of the plaintiff, &c.; the plaintiff also declared in the common counts, and that the defendants had not shown ordinary diligence, whereby, &c.

It appeared from the testimony:

'That on March 1st 1866, the plaintiff delivered the tobacco to the defendants, who made an advance upon it, with instructions to ship to New Orleans for sale. ' And a witness for the defendants testified that the latter made every exertion in their power to ship the tobacco to that !place, up to the time of shipping it to New York in April 1866, without success, and also that from the 1st of April 1866 to the 31st of December 1866 no vessel left Wilmington for New Orleans. ( It cannot be understood from the evidence, and in the argument here it was not insisted, that the defendants undertook to ship to New Orleans at all events. They were not carriers, but only factors, and the extent of their undertaking could only have been to ship it if by ordinary diligence it could be done. ( On March 4th the plaintiff telegraphed to the defendants repeating his instructions to ship to New Orleans. It is not necessary

to notice the correspondence respecting certificates of the payment of taxes. Omitting several repetitions of the instructions to ship to New Orleans, on April 6th the defendants wrote to the plaintiff that they had been disappointed in shipping the tobacco, but hoped to do so in a few days. On April 24th the defendants wrote to the plaintiff that they had been unable to ship his tobacco to New Orleans, but had shipped it to New York. If the evidence of the defendants is to be believed, they had exercised due diligence in endeavoring to ship to New Orleans, and were unable to do so; but this inability gave them no excuse for shipping to New York. It was their duty to have informed the plaintiff of their inability, and to have awaited his directions: at this point the plaintiff might well have declined any further interference, and have thrown upon the defendants the consequences of their disobedience of his orders. He does not, however, do this, but by his letter of April 30th, ratifies the shipment to New York and waives the disobedience. It is true that he still directs them to ship to New Orleans, if the market will justify the expense: he also directs them, if they think it advantageous, to delay sales, and requests an advance. All this leaves the defendants a discretion. This letter was substantially repeated on the 25th of May. On the 29th of May the defendants sent to the plaintiff the New York prices, and requested instructions whether to sell in New York, or to ship to New Orleans, and declined to make a further advance. On July 7th the defendants wrote to the plaintiff substantially to the same effect. On July 20th the defendants having received no reply, wrote again for prompt instructions. On August 11th, still having received no reply, they wrote again, urging instructions or payment of advances. The defendants having still received no reply, on August 31st 1866 sold the tobacco in New York, for a sum which paid their advances and expenses, and left a small balance which was paid to a brother of the plaintiff. As the brother was not the agent of the plaintiff for this purpose, this sum or any other balance in the hands of the defendants, could be recovered on the common counts; but

t does not appear to be claimed, it being considered as having been paid to the plaintiff without prejudice.

The Judge told the jury:

1st. That the defendants had no right to delay sales till August 31st without making a further advance &c.

*Remark.* The complaint was that the defendants had not shipped to New Orleans; and this instruction therefore had no reference to the case; but if it had, we think the defendants were justified in delaying the sale. The tobacco reached New York in the latter part of April. Had the plaintiff clearly instructed the defendants to make an immediate sale, it would have been their duty to do so; but though repeatedly urged to give instructions he failed to do so: consequently the defendants were left to act on their own discretion, and there is no evidence that they acted faithlessly, or without ordinary diligence. The making the advance was not a condition precedent to the authority to delay sales, given by the letter of April 30th.

2d. That defendants were not entitled to a credit for 5 *per cent.* discount on their advance.

*Remark.* That was more a question of fact than of law. If the plaintiff agreed to pay it, or if there was a custom so general and notorious that the plaintiff must be presumed to have known it and to have contracted in reference to it, the charge could be maintained. The existence of the agreement should have been left to the jury.

3d. That if the defendants contracted to send the tobacco to New Orleans and sent it to New York, they were in the wrong and liable to damages; unless the plaintiff modified the contract.

*Remarks.* We think the proper instructions would have been, that the defendants were in the wrong in shipping to New York, but that if the jury believed that the subsequent letters from the plaintiff, put in evidence, were written by him, he ratified the act of the defendants, and waived his claim to damages by reason of it. The genuineness of the letters being

admitted or found, their effect was matter of law on which the Court should have pronounced.

4. That if the jury believed the witnesses, the defendants did not act according to the plaintiff's instructions in his letters of April 30th and May 25th.

*Remarks.* The letter of April 30th contained no positive or definite instructions for the government of the defendants. The letter of May 25th, positively directs the defendants if they can sell for anything like the prices they had mentioned, to do so; but otherwise to ship to New Orleans: but it pro- fesses only to recite what he had written on April 30th, and thereby leaves it doubtful whether his intentions were not to be construed by his letter of that date. A factor is bound to obey instructions if they are definite, but a principal cannot impose uncertain liabilities on his agent by obscure or contra- dictory orders. In such cases he leaves him to the exercise of his own judgment honestly and diligently exerted.

5. That if the jury find, that the defendants were instructed to sell in New Orleans, and actually sold in New York, the damages were the difference between the prices in New Orleans and that obtained in New York.

*Remark.* This was erroneous, because it wrongfully as- sumed that the shipment to New York had not been ratified. But assuming that the breach of orders in sending to New York was not waived, we think the Judge mistook the rule of damages. If the defendants, with due diligence, were unable to ship to New Orleans, it was their duty, in the absence of other instructions, to have retained the tobacco in Wilming- ton, and in case the plaintiff failed within a reasonable time after request to repay the advance, they might have sold it in Wilmington. If therefore on this hypothesis the plaintiff is entitled to any damages, it is, to the difference between what the tobacco might have sold for in Wilmington, and what it did sell for in New York, as to which there was no evidence.

As the case stands on the present pleadings, it seems to us that the main questions to be submitted to the jury were:

1. Did the defendants exercise ordinary diligence in endeavoring to ship from Wilmington to New Orleans? If the jury believe the evidence, they did.

2. Did the defendants act with ordinary diligence after the arrival of the tobacco in New York; considering the instructions of the plaintiff? If the jury believe the evidence, they did.

3. Was there an agreement for a discount on the advance; or a custom to charge such discount known to the plaintiff, or so notorious that it must be presumed to have been known and assented to ?

The judgment is reversed, and there must be a *venire de novo.*

PER CURIAM.                                    *Venire de novo.*