## S. BLAISDALE CO. v. LEE.

(December 19, 1900.)

1. *Factors—Commission Merchants—Advances—Contract.*

Where a factor made advances on cotton shipped for sale, he may, after demand and refusal of repayment of advances, sell the same for less than the stipulated price.

2. *Factors—Advances—Reimbursement —Waiver —Principal.*

The right of a factor to sell for less than the stipulated price, to reimburse himself for advances, is not waived by an agreement to wait longer for reimbursement, the principal agreeing that he shall lose nothing thereby.

3. *Factors—Advances—Counter-claim—Questions for Jury.*

Where a factor brings an action to recover advances, and defendant sets up counter-claim for wrongful sale, the issue raised is a question for the jury.

4. *Factors—Advances.*

Where a factor brings suit for the whole amount of advances made, and asks for sale of cotton, which was not within the jurisdiction of the Court, he does not waive his right to sell the cotton to reimburse himself for advances.

CIVIL ACTION by the S. Blaisdale Company against R. O. Lee and H. J. Gregg, trading under the name of R. O. Lee & Co., heard by Judge *O. H. Allen* and a jury, at March Term, 1900, of MECKLENBURG Superior Court. From judgment for defendants, the plaintiff appealed.

*H. W. Harris,* for the plaintiff.
*Jones & Tillett,* for the defendants.

FURCHES, J. The plaintiff is a corporation doing busi-

ness of a cotton broker, at Chicopee, Mass., and the defendants are partners living, and doing business as cotton dealers, in Charlotte, N. C. About the 1st of July, 1897, the defendants sent the plaintiff samples of 50 bales of cotton, and engaged the plaintiff to sell it, for which the plaintiff was to have $1 per bale. The plaintiff effected a sale of the cotton at the price of 11 1-4 cents per pound, and so informed the defendants. (Thereupon the cotton was shipped to plaintiff, in Massachusetts, and defendants drew a check upon plaintiff, with bills of lading attached, for said cotton, at the price of 11 1-4 cents per pound, less commissions. / The plaintiff at once paid the draft, but when the cotton reached Chicopee 25 bales were rejected by the purchaser as not being as good as the samples. The purchaser took the 25 bales which were as good as the samples at 11 1-4 cents, and refused to take the other 25. The plaintiff at once notified the defendants that the party to whom it had sold refused to take 25 bales of the cotton shipped, for the reason that it did not come up to sample, and asked for instruction. Upon this a long correspondence ensued by letter and telegram, until finally the plaintiff notified the defendants that business was opening up, and it must have the money it had advanced, and, if it was not paid soon—in a week or two—plaintiff would sell the cotton and apply the proceeds in payment of the money advanced. ), The defendants at one time in this correspondence authorized plaintiff to sell for 10 1-2 cents, but plaintiff at once wrote them that it was impossible to get that price for the cotton; that plaintiff had made every effort to sell, and 9 1-2 cents was as much as it had been offered. The defendants made no reply to this, until finally, after more than a year, plaintiff sent its claim to an attorney in Charlotte for collection. The attorney called upon defendants and demanded payment, when defendants said that,

when cotton advanced to what it was selling for when they sent the cotton to plaintiff, they would settle the claim. But defendants then wrote plaintiff that its attorney had called upon them and demanded payment, and asked plaintiff to hold the cotton a while longer, and they would try and sell the same, and that plaintiff should not lose anything by so doing. The plaintiff, in reply to this letter, said it was satisfactory, and there is evidence tending to show that both parties tried to sell the cotton. This was in October, 1898, and the matter seems to have rested here for some time, when plaintiff's attorney called upon defendants again and demanded payment, and defendants again told him that they would settle with him when cotton got to be worth as much as it was when they shipped the plaintiff the cotton. This demand of plaintiff's attorney was repeated more than once, when he received the same reply. Finally, on the 12th of January, 1899, plaintiff commenced this action, returnable to January Term of MECKLENBURG Superior Court. At that term, plaintiff filed a complaint in which it asked that the cotton might be sold under the order of the Court. But no answer was filed at that term, and plaintiff obtained leave of the Court to file a new complaint, which seems to have been filed at that term, but which was not filed until the 12th of March, 1900. In this complaint it is stated that on the 5th of January, 1899, plaintiff sold said cotton for 8 1-2 cents per pound, and applied the proceeds of said sale towards paying the balance due plaintiff, which left a balance due plaintiff for advances, storage, and insurance, of $639.87, for which plaintiff demanded judgment. The defendants answered, alleging bad faith on the part of plaintiff in the transaction, denying that they had any notice of the sale until the filing of the amended complaint, and denying plaintiff's right to sell the cotton, and alleged that plaintiff had agreed

to hold the cotton, and that plaintiff and defendants together were to sell the same.) But defendants ratify the sale, and admit that they are indebted to the plaintiff on account of said cotton transaction $639.87, as claimed by plaintiff, but set up a counter-claim against plaintiff of $1,900 as damages for plaintiff's wrongful selling of said cotton. Upon the trial, these issues were submitted to the jury: "(1) What amount, if any, is plaintiff entitled to recover of defendants? Ans. Nothing. (2) What amount, if any, are defendants entitled to recover of plaintiff? Ans. $137.36."

( Among other prayers asked by plaintiff was No. 3, which was as follows: "That the Court instruct the jury that a factor, or commission merchant, who has in possession cotton or other goods to sell at a certain limited price, and has made advances to the owner upon such cotton or goods, has a right to reimburse himself by selling the same at the fair market price, though below the limited price, if his principal refuses, upon demand or request, after a reasonable time, to repay the advances." This prayer was refused, and the Court charged the jury as follows: "That, if the jury believe the evidence in this case, the sale of the cotton in question made by the plaintiff in January, 1899, was wrongful and unlawful, and the defendants are entitled to recover of the plaintiff the damages sustained by reason of the sale." There was error in refusing plaintiff's prayer, No. 3, and in the instruction given by the Court. It would be remarkable, if defendants could employ plaintiff to sell 25 bales of cotton upon samples, and plaintiff should effect a sale at 11 1-4 cents per pound, and defendants should ship plaintiff 25 bales of cotton, and draw upon the plaintiff for the full amount at the price of 11 1-4 cents, which plaintiff paid; and when the cotton shipped did not come up to the sample, and for this reason the purchaser would not take the cotton; that, after a

delay of more than two years, with repeated demands upon defendants to repay plaintiff the money it had advanced and paid upon defendants' draft, and defendants' repeated refusal to repay the same, until plaintiff finally sold the cotton, and sued defendants for the balance due it on said advance and for storage and insurance—that defendants should, by way of counter-claim, recover $137.36 more than they had already received. It was admitted by defendants on the argument that plaintiff would have had the right to sell the cotton to reimburse it for the money advanced, if it had not waived this right; and it was contended by defendants that plaintiff had done this by agreeing, in October, 1899, to wait longer, upon the promise of defendants that plaintiff should lose nothing by doing so, and that they would try and sell it together. But it seems now, by defendants' contention and the verdict and judgment in this case, that plaintiff is about to lose something by agreeing to defendants' request, and waiting awhile longer. But, if there was anything in plaintiff's acceding to this request, it was put an end to when plaintiff, through its attorney, called upon defendants more than once and demanded payment, and when it received much as it was when we shipped the cotton to the plaintiff, we will settle." We say, if there was anything in this correspondence, it was done away with by these demands and answers. But we do not think there ever was anything in this correspondence that took from the plaintiff its right to sell this cotton. It seems to us that plaintiff had this right all the while. 12 Am. and Eng. Enc. Law, 651; *Bessent v. Harris,* 63 N. C., 542.

The other ground upon which defendants claim that the sale of the cotton by plaintiff was unlawful is that plaintiff, in January, 1899, brought this action for the full amount of advances to defendants, and filed a complaint in which it

127——24

S. BLAISDALE Co. *v.* LEE.

asked that the cotton be sold under order of the Court. This was certainly a very awkward demand on the part of plaintiff, but we do not see how it benefits the defendants. There is not an allegation in the complaint to base such a prayer upon, and, besides, the cotton is admitted to have been in the plaintiff's warehouse in the State of Massachusetts, outside of the jurisdiction of the Court. This being so, the plaintiff's rights under the original consignment were not taken away. *Craft v. Association* (at this term) 37 S. E., 190. The only right of action the defendants may have against the plaintiff, and which they might set up by way of counter-claim, is that based upon their allegation of bad faith and want of skill on the part of plaintiff. And these were questions of fact, and should have been submitted to the jury. There is error, for which there must be a new trial.