VAN A. WEBSTER v. ASHER RICHARDSON.

Decided April 21, 1909.

**1.—Factor—Negligence.**

Where a factor shipped produce to a market at which the sale did not realize a profit, evidence that he knew at the time of shipment that it would not realize a profit in such market, and that at such time there was a market price for it at place of shipment which would have realized a profit, was sufficient to support a finding of negligence.

**2.—Same—Liability.**

If the factor ships produce to a market where sale is made without profit and it is not shown that at the time of shipment he had knowledge that no profits would be realized, a finding of negligence rendering him liable can not be based on a mere mistake in judgment or miscalculation.

Appeal from the District Court of Bexar County. Tried below before Hon. J. L. Camp.

*William Aubrey,* for appellant.—An agent who acts under positive orders must, at his peril, pursue them literally. It is not less evident that a factor who is not particularly instructed, but in whom a discretion is vested, is entitled to protection so long as he acts according to the best of his judgment and is innocent of fraud and gross abuse of the confidence placed in him. If a loss ensues from mistake or error of judgment where there is not *lata culpa* or *crassa negligentia,* his principal, and not he, must bear it. Were it otherwise, no prudent man would accept a trust of the kind; and a merchant, however distant from the scene of action, would be obliged at a great hazard to give positive directions, instead of reposing on the intelligence of a correspondent, who might take advantage of circumstances which were neither contemplated nor foreseen by himself. Liotard v. Graves, 3 Caines (N. Y.), 236.

Where the factor's power is general, it has been held that he must exercise a sound and honest judgment in those matters which are left to his discretion. He will not be responsible if he appear to have acted to the best of his abilities, and not to have been guilty of breach of orders, gross negligence or fraud. (Moore v. Mourgue, Cowp., 480; Liotard v. Graves, 3 Cai., 238; 1 John. Cas., 175; Van Allen

v. Vanderpool, 6 Johns., 72; 1 Camp'b., 598; 1 Com. on Cont., 236; I Liv., 342; Leverick v. Meigs, 1 Cowan (N. Y.), 658.)

Where goods are sent to a factor for sale without any limitations or instructions as to the terms or time of sale, he is at liberty to sell as in the exercise of a sound discretion he shall deem proper for the interest of his principal. Marfield v. Goodhue, 3 N. Y., 72.

*C. C. Clamp* and *Seth S. Searcy,* for appellee.

JAMES, CHIEF JUSTICE.—The action is upon a contract of agency with reference to the handling and marketing of appellee's onion crop of 1905. Webster sued, alleging that after handling and disposing of the crop and advances made by him there was due him a balance of $1910.26 for which he asked judgment. Richardson, among other things, pleaded a cross action asking for damages.

The cause was tried by the judge, whose conclusions were substanially as follows: After setting forth the contract dated March 8th, the court found, "2d, that prior to May 11, 1905, Richardson delivered to plaintiff at Encinal, Texas, 2745 crates of crystal wax onions in best condition and of finest quality; 3d, that said 2745 crates were shipped by plaintiff to northern, eastern and western markets on the dates between May 5th and May 11th inclusive, as shown on the account attached to the petition, and that on said dates the prevailing market price for such onions at Encinal and Cotulla, Texas, and other points, was from $1.25 to $1.60 per crate f. o. b. cars, and that the cost of placing said onions f. o. b. cars was 46 cents per crate; 4th, that after May 11th, 1905, plaintiff shipped 3315 crates making a total of 6060 crates shipped by him for Richardson under such contract; 5th, that plaintiff made the advances specified .in said account, and that after said 6060 crates had been disposed of and the proceeds received, the advances made 'by plaintiff exceeded the proceeds of sales by $1910.25 as shown 'by the account; 6th, that Richardson had received nothing from said onions; 7th, that plaintiff was negligent in the handling and disposing of the 2745 crates; 8th, that if said 2745 crates had been handled and disposed of in a reasonable and prudent manner, plaintiff would have realized therefrom at least a sufficient amount net to Richardson to cover the cost of handling, shipping and marketing the entire lot of 6060 crates; and that after May 11, 1905, the market for onions was uncertain and changeable; that in handling and disposing of said shipments in excess of said 2745 .crates and shipped after May 11th plaintiff was not negligent."

The judgment founded on the above conclusions was that plaintiff was not entitled to recover anything on the account sued on, and that Richardson was not entitled to recover anything on his cross action. Webster appeals.

The matter before us concerns only the shipments made on and prior to May 11th, the court having found that it was only in regard to these particular shipments that plaintiff was negligent.

Appellant's third, seventh, ninth and twelfth assignments of error are overruled. The answer was sufficient and it was not necessary for

defendant to plead his evidence. The thirteenth is also overruled. The matter to which the special exception was addressed was not one of failure of consideration.

The fourteenth assignment is that the court erred in its third conclusion of fact for the reason that there was no allegation and no evidence before the court that the prevailing market price for crystal wax onions at Encinal, Texas, during the period from May 5, 1905, to May 11, 1905, inclusive, was from $1.25 to $1.60 per crate, f. o. b. cars. Appellant's proposition is that there was no allegation nor proof of such market value at Encinal. As we have concluded that the judgment should be reversed by force of the next assignment of error, this assignment will not be dwelt upon further than to state that there was some evidence that the market price at Cotulla was as found by the court, though not at Encinal.

The fifteenth assignment complains of the seventh conclusion of fact, for this, that there was no evidence that plaintiff was negligent in the handling and disposal of the 2745 crates; and that plaintiff did not handle and dispose of same as a reasonable and prudent man should have done; the evidence on the contrary showing that plaintiff in handling and disposing of said onions used the best and customary appliances, skilled and experienced employees and used on his part capable and experienced judgment and that he spared neither pains nor expense to realize for defendant the full value of said onions. This assignment goes to the foundation of the judgment allowing the reconvention to defeat the plaintiff's demand. If there was no evidence tending to show that plaintiff was negligent with reference to said 2745 crates, the judgment can not be sustained.

The conclusions do not specify what particular act or failure of plaintiff constituted the negligence found by the court. The court evidently did not find that the mere shipping of these onions to outside markets was negligence, apart from the circumstances and conditions prevailing which made the shipments at those times a negligent act. The contract and correspondence clearly permitted and contemplated shipments to outside points. The shipments after the 11th were likewise to foreign markets and as to these, though losses were shown, the court found there had been no negligence. The finding must, therefore, have been predicated upon something else than that the act of shipping to such markets of itself was negligence. There must have been found to be something peculiar in the shipments between May 5th and 11th that made them negligent. Nor would it seem that the court considered that there had been negligence in the manner of handling the onions at Encinal. There was no evidence that they had been improperly handled at that point, though there was evidence tending to show that plaintiff's agents handled onions at Cotulla improperly, but the onions in question were not handled at Cotulla.

The only evidence of negligence which we have been able to trace in the statement before us, touching the shipments between May 5th and 11th inclusive, consists in the following testimony: It was shown that plaintiff was in constant and intimate touch with the markets to which he was shipping. He stated: "I had wires every day from

the markets throughout the United States where I expected to place these onions. I made the most strenuous efforts to place all the onions of defendant that I ever made in my life. I was anxious to place this crop most profitably because I expected to get something out of it. I was in the business primarily for profit. The main motive was to get these people a good price for the stuff besides the commission I got. I wanted to do the best I could, *for after the first five cars had moved, I realized I could not make a cent out of the business.* I incurred the heaviest expense after I realized there was no chance for me to make anything out of the commission business." On May 10, 1905, plaintiff wrote Richardson: "It looks as if there was going to be something of a glut in some of the markets during the next ten days." The last of the five cars referred to by the witness was shipped on the tenth, the day said letter was written. That day plaintiff shipped out the sixth car and the next day, the eleventh, he shipped out the other.

It would thus appear from plaintiff's own testimony that the last two cars were shipped out at a time when he knew they would not realize a profit in the markets to which he was sending them. This much the court could have found from the testimony, and this fact in connection with the fact that the court specifically found, viz.: That at that time there was a market price for these onions at Cotulla and Encinal, Texas, which would have realized a profit from them, would, in our opinion, support a finding of negligence of plaintiff in shipping them out of the State for sale. Plaintiff's connections with Encinal and Cotulla were such that if there was such a market at either place, he must have known of it, or at least the court would have been justified in so finding.

This finding of negligence, which the record would support, affects only the last two cars shipped out. There is nothing in the evidence that we discover which would warrant a finding of negligence on the part of plaintiff with reference to the cars previously shipped. Those previously shipped were not shown to have been shipped with foreknowledge of their realizing no profit, and for mere mistake of judgment or miscalculation, plaintiff was not responsible. (Drumm-Flato Comm. Co. v. Union Meat Co., 33 Tex. Civ. App., 587.)

We think the court erred in the finding of negligence in reference to the whole of the shipments from May fifth to May eleventh and, as this was vital, it requires a reversal of the judgment.

*Reversed and remanded.*