## 4616. JOHN FLANNERY COMPANY *v.* JAMES.

1. When a verdict is supported by some evidence, though it be against the large preponderance of the evidence, this court can not grant a new trial on the ground that the verdict is contrary to the evidence.
2. A cotton factor's agent who is authorized to solicit shipments of cotton to his principal is presumptively authorized to make terms under which

the cotton shall be shipped, received, stored, sold, and handled by his principal.

3. Where a cotton factor has advanced to the owner large sums of money on shipments of cotton, so that the factor's pecuniary interest in the cotton equals, if it does not exceed, the pecuniary interest of the owner in the cotton, the factor is not bound at his peril to hold the cotton under instructions from the owner, but has the right to exercise his own judgment as to when he shall sell the cotton, having due regard to his own pecuniary interest as well as to that of the owner; and the factor is not bound to follow instructions from the owner detrimental to his own pecuniary interest. Under the facts of this case a charge embodying in substance the rule of law above stated should have been given.

DECIDED SEPTEMBER 16, 1913.

Complaint; from city court of Blakely—Judge Rambo. December 16, 1912.

Judge Pottle being disqualified, Judge Hammond, of the Augusta circuit, was designated to preside.

O'Byrne, Hartridge & Wright, W. G. Park, for plaintiff.

Pope & Bennet, Charles L. Glessner, for defendant.

HAMMOND, J.   John Flannery Company is a cotton-factorage corporation located in Savannah, Georgia. James is a cotton grower, cotton buyer, and shipper, located in Blakely. John Flannery Company sued James in the city court of Blakely for $8,250.32 upon an account, claimed to be due for advances made to him on 834 bales of cotton, commissions, storage charges, insurance, etc. James filed an original plea to the suit, in which he denied that he owed the amount claimed for storage, insurance, and interest.  He set up a special contract made with an agent of John Flannery Company, by the terms of which he was to be charged only twenty cents a bale for storage and insurance, and six per cent. interest on advances, and alleged that the difference in his favor between the amount of these items as claimed in the suit (except the difference as to interest, which was waived) and the amount due under contract was $2,641.50; and he asked that this amount be deducted from the account.  In his plea he admitted that he owed the balance of the account, to wit, $5,608.82; and this amount was tendered in full settlement and payment.  The plea alleged also certain facts in reference to this tender, which was set up as an accord and satisfaction of the account.  Subsequently, during the same term of the court, the defendant filed an amendment to his answer, in which he alleged that at the time the 834 bales of cotton were shipped to John Flannery Company it was distinctly and ex-

pressly agreed between them that the cotton was to be sold by the plaintiff for the defendant whenever the price in the Savannah market reached 11½ cents a pound, but the plaintiff, in violation of this agreement, failed and refused to sell the cotton at this price, although the cotton did reach this price per pound in the Savannah market and the plaintiff could have sold it for this price; and the plaintiff subsequently, in violation of the defendant's instructions and the agreement, did sell 820 bales of the cotton at 11 cents per pound, and 14 bales of the cotton at 9 cents per pound, and thereby the defendant lost, and the plaintiff became indebted to the defendant, the sum of $2,273.07, being the sum which would represent the difference in the value of the cotton at 11½ cents per pound and the price at which it was sold by the plaintiff. The amendment set up also that the plaintiff had lost all right to storage, insurance, and interest claimed, because of its negligent failure to carry out the defendant's instructions in reference to the sale of the cotton. The plea set out the amounts which it was claimed should be deducted from the account sued on. On the trial of the issues thus formed a verdict was found for the defendant. On motion of the plaintiff a new trial was granted.

On the second trial the answer was further amended by adding the following allegations in substance: That the plaintiff's disregard of the instructions as to the sale of this cotton when the market price was 11½ cents per pound, and its failure to comply with its duty as factor, arose out of the negligence and careless failure and omission of the plaintiff to properly grade and correctly classify the 834 bales of cotton, which lot of cotton graded as high as "Liverpool middling," but was negligently and carelessly undergraded by the plaintiff, and the plaintiff made no attempt to sell the cotton as "Liverpool middling" while the price of that grade of cotton remained as high as 11½ cents per pound, and did not discover its negligent mistake in undergrading the cotton, until the market price had declined and it was impracticable to sell the cotton for this price in compliance with the instructions from the defendant. On the second trial the verdict was for the defendant, and the plaintiff filed a motion for a new trial, based upon the general grounds, and several special assignments of errors of law in the admission of evidence, and in excerpts from the charge of the court and in refusals to charge. This motion was denied, and the case is

here for review. We will first discuss the case as made by the evidence pertinent to the issues, and we will then consider, in the light of the evidence, the special assignments of errors of law.

1. The defense relied upon in the original plea and answer—that the plaintiff was entitled to only 20 cents per bale for storage and insurance, as per the terms of a special verbal contract made with the agent of the plaintiff, was proved by the defendant and his son. It was strenuously denied by the agent with whom the contract was alleged to have been made. On the law as applicable to this question we state the general rule. Whenever an agent is empowered to do a particular thing he is also empowered to use all lawful means necessary to accomplish it, and when an agent is sent out to solicit shipments of cotton to his principal, he is a general agent for that purpose, and presumptively is fully authorized to make terms upon which the cotton may be shipped, received, stored, sold, and handled by the principal. *Bass Dry Goods Co.* v. *Granite Mfg. Co.,* 119 *Ga.* 124 (45 S. E. 980); *French Piano Co.* v. *Cardwell,* 114 *Ga.* 340 (40 S. E. 292). This rule would not be altered by any secret instructions given to the agent by the principal, unknown to the shipper. Civil Code, § 3595.

2. The second defense relied upon in the first amendment to the plea and answer is that the plaintiff negligently failed and refused to comply with the instructions given by the defendant to sell his cotton when it reached the market price of 11½ cents per pound. The instructions are admitted by the plaintiff, but it is insisted that they could not have been complied with, for the simple reason that cotton of the grade of defendant's cotton never reached 11½ cents per pound in the Savannah market. True, the defendant introduced some evidence, not of much probative value, that the cotton could have been sold for 11½ cents per pound; but the daily market reports of the Savannah Cotton Exchange were sent to this defendant by the plaintiff every day, and he had knowledge from these reports that at no time had cotton reached 11½ cents per pound in Savannah for cotton of the grade of his cotton in the hands of the plaintiff. No reason is given why the plaintiff could not have complied with the instructions. On the contrary, the facts prove that it had every reason to make a sale as promptly as possible. When the cotton was first shipped by James he drew drafts for its value on the John Flannery Company. These drafts

were honored even before the cotton had been received, and there never was a time when the factor did not have a greater pecuniary interest in the cotton than the owner. Besides, the record contains many letters from the John Flannery Company urging James to sell because of the improbability of the cotton reaching 11½ cents per pound. To many of these letters James made no reply. The record shows also that the John Flannery Company needed the money which had been advanced to James on the cotton, and made frequent requests for payment. James did make some payments, but never sufficient to make the John Flannery Company safe, looking alone to the value of the cotton. It seems wholly inconceivable that a factor who had advanced on cotton more than its value, and who needed the repayment of its advances, should negligently or arbitrarily fail or refuse to sell the cotton, when by doing so his debt would be paid. James insists that the plaintiff could have sold his cotton for 11½ cents per pound, and that if this had been done the factor's debt would have been fully paid from the proceeds. We are discussing the question entirely apart from the well-established rule that a factor who has made advances on goods can regard his interest as to the time of sale, notwithstanding instructions. We are at a loss to understand how this issue could have been found against the factor. Instead of negligent disregard of a factor's duty, the evidence shows the greatest regard and consideration for the interest of the owner.

3. We come now to a consideration of the second amendment to the plea and answer, which was filed at the last trial. It is insisted that the reason why the plaintiff did not sell the cotton at 11½ cents per pound is because it had been undergraded; that the cotton was "Liverpool middling," but that the plaintiff had negligently undergraded it. This is the defense mainly relied on in the argument before this court. It is true the defendant testified that his cotton was "Liverpool middling," and the evidence shows that "Liverpool middling" was "Savannah middling;" and since the defendant so testified, this court can not, in a juridic sense, say that there was no evidence in support of the amendment. But it is pregnant with significance that the defendant delayed so long in setting up this defense. He knew the grade which the plaintiffs gave his cotton when first received. He was definitely informed in a letter from the plaintiff, April 9, 1906, that "We were rather

strict in giving grades of your cotton as fully low middling. In value it will average between fully low middling and middling." Notwithstanding his knowledge of cotton and this representation as to the grade of his cotton, he accepts without dissent the grading as made by the factors. During the whole life of the transaction and during several years of litigation no objection was made to the grading of the factor. The question of grading was vital to the value of the cotton. On it depended the opportunity to sell at 11½ cents per pound. On it depended the ability to repay the debt made for advances. Yet no word was spoken or written by the defendant, although he was in possession of specific information on the subject. He did not take issue with the factors or notify them of any undergrading. He said nothing about undergrading, when he made his tender. It was strictly a post-mortem discovery. Though brought to life for the first time on the dissecting table of the second trial, it would be good in law if it were a real discovery. But why should the factors have undergraded the cotton? It is conceded that they were skilful, with long experience, and were business men of high integrity. Besides, they had every reason to grade the cotton as high as they truthfully could. They had advanced more money on it than it was worth, and the higher the grade the greater the security for the debt. While, therefore, the evidence pertinent to the issue made by this amended plea makes the grant of a new trial on general grounds inconsistent with the view of our right under repeated rulings, yet it moves us to a more favorable consideration of the special assignments of errors of law.

4. One of the grounds of the amended motion for a new trial assigns error in the following charge of the court: "If you believe, from the testimony in this case, that Flannery Company had a soliciting agent upon the road, whose duty it was to go over his territory and solicit shipments of cotton for Flannery; if you believe that that agent had authority to quote the charges and expenses, or the terms upon which the Flannery Company would handle that cotton, then I charge you that it would follow, as a matter of law, that this agent would have a right to vary the terms under which he was sent out." This instruction, while rather broad, is not in conflict with the rule discussed in a preceding division of this opinion.

5. The trial judge instructed the jury that "If any special in-

structions were given as to price, they [referring to the plaintiffs] were bound to sell it [the cotton] at that price, or stand the consequences of failure to do so if they sold it at a lower price." While this instruction states correctly an abstract principle of law, under the facts of this case it should have been qualified by the statement that if a factor made advances on produce consigned to him for sale, he would have an interest in the consignment, and would have the right to exercise his discretion as to the time of sale, and that if any instructions given were detrimental to the factor's interest they might be disregarded by him. *Frost* v. *Powell*, 10 *Ga. App.* 95 (72 S. E. 719), and citations. We think this charge was erroneous also because there was no evidence to warrant it. It was not contended that the plaintiff had, in selling the cotton for a lower price, disregarded the defendant's instructions; on the contrary, the evidence proves beyond all controversy that the plaintiff held the cotton, although not compelled to do so, because of the plaintiff's large pecuniary interest in it, for the 11½ cents per pound, and did not sell it until instructed by the defendant to do so at 11 cents per pound. True, the factor did not get 11 cents per pound, but it voluntarily made good the difference to the defendant, moved to do so by the natural desire to close out a transaction in which it had been from the first a probable loser.

We have given the case careful examination, and are clearly of the opinion that the ends of justice, as well as the voice of the law, demand another trial.  *Judgment reversed.*