WM. D. CLEVELAND & SONS v. JAMISON.
(No. 8307.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 15, 1916. Rehearing Denied Feb. 19, 1916.)

1. FACTORS ☾25—DUTIES—SALE OF GOODS—LIABILITY IN DAMAGES.

Where a factor, to whom no instructions are given, exercises ordinary care, skill, and diligence to obtain the fair market value of his principal's goods, placed in his hands for sale, he is not liable in damages, though he sells the goods for less than their market value.

[Ed. Note.—For other cases, see Factors, Cent. Dig. § 26; Dec. Dig. ☾25.]

2. FACTORS ☾47—SALE OF GOODS—REIMBURSEMENT FOR ADVANCES.

Where there is no agreement or direction to the contrary before any advances are made, a factor, who has made advances on goods consigned to him for sale, may sell enough of the goods, over his principal's objection, to reimburse himself for the advances; his right of sale not being limited by any subsequent order of the principal, except as to the surplus not necessary to effect the reimbursement.

[Ed. Note.—For other cases, see Factors, Cent. Dig. §§ 65–71; Dec. Dig. ☾47.]

3. FACTORS ☾47—SALE OF GOODS—RIGHTS OF FACTORS—REIMBURSEMENT FOR ADVANCES.

Where cotton was consigned to factors to sell, without any special instructions or agreement that same should be held for a specified price, and they advanced sums approximately equal to the value of the cotton, and the principal expressly authorized them to sell the cotton the best they could, using their own judgment in the matter, and the principal, though notified that the advancements were in excess of the value of the market price of the cotton and requested to remit the difference, failed to remit and asked for more time, the factors had a right to sell at what seemed to them the market price.

[Ed. Note.—For other cases, see Factors, Cent. Dig. §§ 65–71; Dec. Dig. ☾47.]

4. CUSTOMS AND USAGES ☾12 — RULES OF COTTON EXCHANGE—FACTORS—KNOWLEDGE OF PRINCIPAL.

Where a principal, with knowledge, actual or constructive, of a rule of the Cotton Exchange that, after a purchaser of cotton has rejected bales for defects, he may, before a resale to others, reconsider and accept the rejected bales at the price first agreed upon, consigns cotton to factors to sell, he is estopped to deny the binding effect of such rule.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 23, 24; Dec. Dig. ☾ 12.]

Appeal from Wichita County Court; Harvey Harris, Judge.

Action by Wm. D. Cleveland & Sons against J. B. Jamison. Judgment for defendant in justice court, and on appeal to the county court, and plaintiffs appeal. Reversed and rendered.

Huff, Martin & Bullington, of Wichita Falls, for appellants. T. R. Boone, of Wichita Falls, for appellee.

BUCK, J. This suit was filed in the justice court of Wichita county by Wm. D. Cleveland & Sons, of Houston, against J. B. Jamison, of Wichita county, upon a verified account for $197.50, for money advanced by plaintiffs as cotton factors to defendant, who was the owner and shipper of 101 bales of cotton consigned by defendant to plaintiffs at Houston, in September, 1911. The defendant denied owing the plaintiff anything and reconvened for damages, claiming that plaintiffs owed him a balance of $173.38, damages for selling 61 of the 101 bales of said cotton below the market price and without the authority of the defendant. From a judgment in favor of defendant on his cross-action for the amount claimed, the plaintiffs appealed to the county court, and there, in a trial before the court, the defendant likewise recovered the full amount claimed on his cross-action. Plaintiffs appeal.

In September and October, 1911, Jamison, who then lived at Sylvester, in Fisher county, Tex., consigned to Cleveland & Sons 101 bales of cotton, and drew drafts on them, with bills of lading attached, for some $45 per bale, said cotton being consigned in the usual way, without agreement or instructions as to the price, time, or terms of sale. These drafts were paid by Cleveland & Sons, and aggregated some $4,605, for which advancement or loan Jamison agreed to pay 6 per cent. interest. On September 30, 1911, Jamison wrote Cleveland & Sons that he did

not expect to hold his cotton long and that he would wire them when to sell. On November 25th Cleveland & Sons wrote Jamison that the market had declined to such an extent that he had an overdraft with them of $214, and asked him to send them $2 or $3 per bale margin to cover this overdraft; that the 101 bales of cotton at 9 9/16 cents basis middling would amount to $4,527, while Jamison owed them $4,740. In this letter they advised Jamison to sell inasmuch, as stated, they did not see very much future in the price of cotton. On November 28th, in reply to the last-mentioned letter, Jamison wrote Cleveland & Sons that he would sell the cotton in December, and asked them to wait 10 days or 2 weeks, until he could get his cotton seed loaded out, and promised to send them a check for the amount claimed. On December 9th Cleveland & Sons wrote, acknowledging Jamison's letter of November 28th, and reminded Jamison that it was rarely that they were asked to hold cotton with an overdraft against it, and expressed a dislike to do it in his case, and a hope that it would be convenient for him to send the amount of the overdraft, and a little margin in addition thereto, if he desired to continue to hold his cotton. On December 17th Jamison answered the last letter from Cleveland & Sons, and stated that he was going to Sylvester, the letter being written from Cleburne, in a day or two, and that, as the market was advancing some, he would like very much to hold his cotton until January, but stated further:

"However, if you do not want to do so, I will tell you to sell it the best you can. That is, will ask you to use your own judgment in the matter. I thank you for waiting on me, and will show you my appreciation in the future."

On December 19th Cleveland & Sons wrote to Jamison, acknowledging receipt of his last letter and further stated:

"Carrying out your instructions, we have this day sold your cotton at 9 9/16 cents basis middling."

On January 6th Cleveland & Sons wrote Jamison that they had sold his cotton on the 19th day of December, 1911, but had not been able to deliver it until the 5th of January following, on account of the long spell of rainy weather, and that the purchaser, on examining it, rejected 61 bales on account of it being sandy, and that the purchaser would not take these 61 bales, and they had it on hand and would hold it until they heard from Jamison. On January 9th the original purchaser agreed to take the 61 bales of rejected sandy cotton at the same price as the other 40 bales, the price of cotton having advanced to 9⅝ cents basis middling, and Cleveland & Sons delivered the 61 bales of cotton to this original purchaser at the same price as the other 40 bales, to wit, 9 9/16 cents basis middling. On January 12th Cleveland & Sons wrote Jamison, inclosing account sales for the 101 bales, with state-

ment of account showing Jamison's indebtedness to them for advancements, freight charges, storage, insurance, commissions, etc., in excess of the amount received for the cotton of $197.15, for which amount they drew on Jamison. On January 14th Jamison wrote Cleveland & Sons, acknowledging their letter of the 6th inst., and stating that he was surprised at the amount of cotton refused on account of sand, etc., and asked them to hold the 61 bales and he would try to come down to Houston soon. However, he did not go to Houston, but on January 21st wrote Cleveland & Sons to send him the number of bales refused on account of sand, and also date of delivery, and that he would have a man come to Houston in a short time to call upon them. On January 24th Cleveland & Sons again wrote Jamison that, if he doubted their statement as to the manner in which they had sold and delivered his cotton, to send a man to Houston to talk to the purchaser. On February 21st a fire destroyed the compress and warehouse of Cleveland & Sons, together with 30,000 bales of cotton on hand. On March 11th Cleveland & Sons sent out to all their customers a printed circular letter, announcing the fact that they had settled with the insurance company, at 10⅞ cents basis middling, and that as soon as account sales could be made up they would be sent out to the customers, and asking them to ship more cotton, etc. One of these letters was received by Jamison, and he replied on the 13th of March that he would accept their offer of 10⅞ cents basis middling, and asked for remittance to cover. Cleveland & Sons replied on March 15th that Jamison had no cotton on hand, and referred him to their letter of January 24th, in which they explained the sale and delivery of the cotton, and again requested him to send a man to see them if he was not satisfied.

Upon these facts the trial court found that the 61 bales of cotton were sold by Cleveland & Sons without authority of law, and that the difference between what Jamison owed Cleveland & Sons for advancements, storage, insurance, etc., and the aggregate of what the 40 bales brought at 9 9/16 cents basis middling, and the 61 bales should have brought, if sold at the market price, was $173.38, for which he gave defendant judgment.

No objection was made to the introduction of evidence by either party, and no bills of exception are contained in the record. Appellants rely on alleged errors occurring to their prejudice in the court's conclusions of law, which conclusions are in part as follows:

"(1) I find that during the fall of the year 1911 the defendant shipped to the plaintiff 101 bales of cotton upon consignment.

"(2) I further find that plaintiff made defendant advances on said cotton so consigned in the sum of $4,740."

"(4) That on December 19th plaintiffs notified

defendant that said cotton had been sold at $9^9/_{16}$ cents basis middling.

"(5) That none of the cotton sold on the 19th of December, 1911, was delivered until January 6, 1912, on which date 40 bales were delivered to the purchaser, who refused to accept 61 bales at $9^9/_{16}$ cents basis middling, on account of sand in said cotton, and that on said date plaintiffs notified defendant by letter of the action of the purchaser, and told defendant that they would hold said cotton until plaintiffs heard from defendant.

"(6) That plaintiffs, without waiting to hear from defendant, on January 9, 1912, sold the remaining 61 bales to the original purchaser of the other 40 bales at the same price, to wit, $9^9/_{16}$ cents basis middling."

Appellants' first assignment is leveled at the court's conclusion of law in paragraph 1 above set out. The proposition under this assignment is that:

"Where an owner consigns cotton to a factor who advances the owner money upon such cotton to an amount equal to or in excess of the value of said cotton, and there is no agreement between them as to price or time of sale of such cotton, and all the instruction given by the owner is for the factor to use his own good judgment as to when to sell, the time of sale and price at which the cotton shall be sold is within the sound discretion of the factor, exercised in good faith and with ordinary care and prudence."

[1-3] We believe it to be well established, no instructions being given, that where a shipper's agent, or factor, exercises ordinary care, skill, and diligence to obtain the fair market value of the shipper's goods consigned or placed in his hands for sale, such agent or factor is not liable in damages to the shipper, although the goods were sold for less than their market value. Drumm-Flato Commission Co. v. Union Meat Co., 33 Tex. Civ. App. 587, 77 S. W. 634; Webster v. Richardson, 55 Tex. Civ. App. 391, 119 S. W. 142. We further believe it to be the rule that in the absence of an agreement to the contrary, or instructions from the shipper, before any advancements are made, to the contrary, that a factor who has made advances on the credit of the goods consigned to him for sale has the right to sell enough of the goods to reimburse himself for his advances, and that after the advancements are made the factor is not bound to obey the subsequent instructions of his principal as to the sale of the goods. His right of sale is not limited by any subsequent order of his principal, except as to the surplus not necessary to effect the reimbursement. John Flannery Co. v. James, 13 Ga. App. 425, 79 S. E. 912; Duffy v. England, 176 Ind. 575, 96 N. E. 704; Justice v. Brock, 21 Wyo. 281, 131 Pac. 38, 133 Pac. 1070; Blaisdale v. Lee, 127 N. C. 365, 37 S. E. 509; 19 Cyc. 126; 11 Mechem on Agency (1914) §§ 2537, 2540, 2567. Therefore we conclude that, by reason of the fact that the cotton was consigned to appellant company by Jamison, without any special instructions from him, or agreement between him and Cleveland & Sons, to hold for a specified price, and by reason of the further fact that Cleveland & Sons had advanced to Jamison large sums of money almost equal to, if not in excess of,

the full value of the cotton, even if sold at the highest market price claimed by appellee, and the further fact that by his letter of December 17, 1911, Jamison expressly authorized the defendant company to sell the cotton the best it could, and to use its judgment in doing so, and the further fact that in spite of notices to Jamison that the advancements made were in excess of the value of the cotton at the price then obtaining, and requests to remit to cover the difference, said Jamison failed to do so, but contented himself with writing various letters asking for more time, that the factors had the right to sell the 61 bales at what seemed to them the market price. We are of the opinion that the trial court erred in rendering judgment for defendant on his cross-action, and in failing to render judgment for plaintiffs on their verified account. It is true that by their letter of January 6, 1912, plaintiffs, after notifying defendant that 61 bales of cotton had been refused on account of sand, stated that they had said 61 bales on hand, and would hold it until they heard from him, yet, since Jamison had already authorized the factors to exercise their judgment in the sale of the cotton, even if the question of advancement was not in the case, we think they would, in the absence of further instructions, have the right to sell the 61 bales at a price which, in the exercise of good faith and good judgment, they deemed a fair one.

[4] Moreover, it might be well to note that plaintiffs' witness, Victor Snyder, who had charge of the sale of this cotton, testified that under the rules of the Cotton Exchange a purchaser of cotton, where he had rejected certain bales on account of claimed defects, such as the presence of sand, had the right, before the sale of the cotton to other parties, to reconsider and accept the rejected bales at the price first agreed upon. There is nothing in the record which even tends to contradict the truthfulness of this statement, or to question the binding effect of such a rule upon defendant. We are inclined to think that if a principal selects an agent to handle and sell his goods, and has knowledge, constructive or actual, of the existence of certain rules, customs, or usages pertaining to the business in which the agent and the purchaser of the goods is engaged, and the agent, in the exercise of good faith, submits to the operation of such rules in the handling and sale of his principal's goods, that the principal could not be heard to deny the binding effect of such rules. There is nothing in the record in the instant case to suggest that the defendant did not know of the custom or rule as to the right of the purchaser to reconsider his refusal, and to take the cotton at the price theretofore agreed upon prior to the sale by the agent to other parties, or that in dealing with his chosen agents he did not do so with full knowledge of the existence of such rule. If we are correct in this conclu-

sion, it affords us a further sound reason why the judgment of the trial court was erroneous.

For the reasons hereinabove set forth, the judgment of the trial court is reversed, and inasmuch as the evidence seems to have been fully developed, and the claim of the plaintiff on his verified account is practically acknowledged to be just and due, if not to be defeated by defendant's counterclaim, no good purpose could be subserved by remanding the cause for another trial, and therefore judgment is here rendered for appellants in the sum of $197.50, with interest from date of judgment in the trial court, and all costs, including costs of this appeal, and that the appellee take nothing by reason of his cross-action.