## GODDARD v. LEXINGTON MOTOR CO.

No. 3841.  Decided February 28, 1924.  Dissenting Opinion March 3, 1924.  (223 Pac. 340.)

1.  CORPORATIONS—EVIDENCE HELD SUFFICIENT TO SUBMIT QUESTION OF AGENCY TO JURY.  Evidence that the general representative of an automobile company, authorized to conduct sales with individual purchasers and generally to look out for new business of the company, agreed with a prospective purchaser that, if he would pay the draft on a bill of lading of an automobile consigned to the company for him, he could inspect the car, and if not satisfied could return it, and that the agent attached his name to the bill of lading as manager of the company's business, *held* sufficient to carry to jury the question of the agent's authority to bind the company by the agreement as to return of the car if unsatisfactory.

2.  PRINCIPAL AND AGENT—GENERALLY EXISTENCE OF AGENCY IS FOR THE JURY, THOUGH EVIDENCE NOT FULL AND SATISFACTORY.  When any evidence is adduced tending to prove the existence of a disputed agency, its existence or nonexistence is generally a question of fact for the jury, even though the evidence is not full and satisfactory
FRICK, J., dissenting.

Appeal from District Court, Second District, Weber County; *George S. Barker*, Judge.

Action by Howard E. Goddard against the Lexington Motor Company.  Judgment for defendant, and plaintiff appeals.

REVERSED, and new trial granted.

*Halverson & Pratt*, of Ogden, for appellant.

*Bagley, Fabian, Clendenin & Judd*, of Salt Lake City, for respondent.

CHERRY, J.

This case was formerly argued and submitted to this court and a decision rendered affirming the judgment. Later, upon the petition of appellant, a rehearing was granted, and oral arguments were again made, in which the questions in dispute were presented in a somewhat different aspect from that in which they were first presented and considered. Upon the rehearing we have reached the conclusion that the judgment appealed from ought to be reversed.

The action is to recover the purchase price paid by appellant for an automobile, alleged to have been delivered to him on approval by respondent upon the terms that, if it was not satisfactory, he could return it and have the purchase price repaid to him. It is alleged that the automobile was not as represented; that appellant refused to accept it, and returned it to respondent and remanded the return of the purchase price paid, which was refused by respondent. Meredith Matthews was joined as a defendant, but at the trial the action was voluntarily dismissed as to him. A jury was impaneled, and the appellant offered his evidence, at the conclusion of which the court granted respondent's motion for nonsuit against him. From the judgment for respondent, entered thereon appellant has appealed to this court.

The main facts disclosed by the appellant's evidence, necessary to illustrate the question to be considered, may be summarized as follows:

The Lindell Auto Company was a dealer in automobiles at Ogden, Utah, engaged in selling Lexington automobiles at retail. The respondent, the Lexington Motor Company, is a corporation engaged in the manufacture and sale of Lexington automobiles at Connersville, Ind. Meredith Matthews was the intermountain representative of respondent, with his office at Salt Lake City, Utah.

On March 18, 1921, the appellant entered into a written agreement with Lindell Auto Company for the purchase of a "Lexington model T sedan" automobile to be delivered to him for the total sum of $4,500.50, of which sum $1,100 was paid by the delivery of a used car to the Lindell Auto Company. Other terms and conditions of this contract are not

material here. In making the agreement for the sale to appellant, the Lindell Auto Company was assisted by one Hendricks, described as being "from the factory." Hendricks communicated an order for the car to the respondent. The amount for which the used car was accepted ($1,100) was the amount of dealer's profit or commissions on the transaction, and the remainder ($3,400.50) was the manufacturer's price.

Before the shipment of the car from the factory, for some reason not clearly shown, the Lindell Auto Company retired from the transaction, and the car, with others, was shipped by respondent from the factory to Ogden, consigned to itself. A draft was drawn on Meredith Matthews for the price of all the cars shipped, which included the $3,400.50, the price of the car in question, with bill of lading for the shipment attached to the draft. Matthews was interested in the matter, knew the situation, and was anxious to consummate the sale to the satisfaction of the purchaser. When the shipment was made, respondent telegraphed Matthews as follows:

"Shipment made Ogden yesterday. Not knowing conditions there draft drawn on you through bank specified Ogden by dealer. Trust you will handle satisfactorily."

Upon the arrival of the car at Ogden, Matthews notified appellant of the fact, and that it was necessary to pay the draft before the car could be obtained. Appellant refused to advance the money before inspecting the car. Efforts were made for permission from the bank and railroad company to allow examination and inspection of the car before paying the draft, which failed. Thereupon Matthews stated to appellant that if he would advance the price of the car the bill of lading would be released, and he could examine the car, and if it was not satisfactory he could return it, and his money would be refunded. Appellant agreed to the proposal, advanced $3,400.50, which was applied by Matthews on the draft, and the car was unloaded. It was defective and unsatisfactory in numerous particulars. Appellant refused to accept it, and after some negotiations and

efforts at compromise delivered the car to respondent and demanded the return of the purchase price paid.

The main question in the case is whether the evidence of the authority of Matthews to bind the respondent by his agreement with appellant was sufficient to be submitted to the jury. The trial court evidently sustained the motion for nonsuit upon the theory that the evidence was insufficient in that respect. The record discloses the following facts relative to the agency and authority of Matthews in the transaction:

The amended answer, while denying that he was a general sales agent, admits that he was a factory representative for the sole purpose of carrying on any necessary negotiations between the company and dealers in and about Utah. It was shown by the evidence of Matthews himself and others that the president of the company employed him to go to Salt Lake City to be the intermountain representative of the company; that he went there on April 1, 1921, and opened up an office as such; that on his door was painted the sign, "Lexington Motor Company, Connersville, Indiana," under which was his name, followed by "Intermountain Representative"; that he was the intermountain representative of the company until the 1st of August following; that he was furnished printed stationary by the company, on which he was so described; that he had instructions from the company relative to the installation of engines, making exhibitions, and giving lectures on the motor used in Lexington cars; that he looked after and handled a show motor and moving picture machine and banners in connection with general advertising; that he conducted negotiations with banks for banking arrangements in behalf of and at the request of the company; that he conducted negotiations for sales of Lexington cars with prospective individual purchasers; that he was on the lookout for business, and "getting a line on the situation in his territory."

With respect to the particular transaction in question, he knew the details of the situation with appellant. He received the telegram from the company, advising him of the shipment,

and stating "trust you will handle satisfactorily." He stated that he had not ordered the car and had no personal interest in the matter, except as a representative of the company. There were no resident dealers in business at the time who could or would handle the transaction. He said he went to Ogden to assist in the delivery of the cars and to get the money from Goddard. Lindell, formerly of the Lindell Auto Company, told him that he was unable to take the cars. Matthews then made a new agreement with Lindell to help unload and deliver the cars. Matthews stated that he had no instructions, except to turn the cars over to the persons who had ordered them. He told Goddard that he was representing the factory, and that Goddard was dealing direct with the company. The shipment was consigned to the Lexington Motor Company. Matthews indorsed the bill of lading by signing the name of the company, by "M. Matthews, Mgr." All of the cars contained in the shipment were not delivered to purchasers, and those not delivered were taken charge of by Matthews.

"When any evidence is adduced tending to prove the existence of a disputed agency, its existence or nonexistence is as a general rule a question of fact for the jury, aided by proper instructions from the court, even though the evidence is not full and satisfactory, and in such cases it is error for the court to take the question from the jury by directing a verdict by instruction, by nonsuit, or by sustaining a demurrer to the evidence." 2 C. J. 960; 1 Mechem on Agency, §§ 296, 299. The proof that Matthews was the intermountain representative of respondent was direct and positive. This title implies general authority. Besides, "if an agency is proved, without showing its extent, it is presumed to be general and not special; not in respect to everything, but only in respect to the business with which the agency is concerned." 2 C. J. 920.

The situation of the parties, their legal relationships, and the peculiar nature of the business between them is to be observed. Respondent, of course, denies liability for the dealer's contract. If it was bound by that contract, which

contained in writing the equivalent of the oral agreement made by Matthews, under the evidence the case must have been submitted to the jury. But as there was no evidence connecting respondent with the dealer's contract the trial court properly concluded that respondent was not liable under it. What, then, was the legal relationship between appellant and respondent? Previous to the arrival of the car at Ogden and the transaction between Matthews and appellant, there were no contractual relations between them whatever. Respondent knew that appellant had ordered an automobile from the local dealer, and it volunteered, so far as appellant was concerned to fill the order. Appellant was under no obligation whatever to accept the automobile from respondent. Its offer was in effect a new proposal of a sale, except that in view of the circumstances it impliedly warranted the car to be substantially the same as described in the dealer's contract. It cannot be said that Matthews was acting in the matter for himself, independent of the respondent. The positive evidence of Matthews, as well as every circumstance of the transaction, shows the contrary. The car was consigned, not to Matthews, but to respondent. After the draft was paid, the car was delivered upon the surrender of the bill of lading in favor of respondent, and indorsed in its name by "M. Matthews, Mgr." Matthews had express instructions by telegram to "handle the matter satisfactorily." The full purchase price went to respondent, and it obtained and still keeps the benefit of the transaction.

We think the evidence was sufficient to show, prima facie, that Matthews was intrusted with the automobile, with authority to sell it, and that in so doing, under the circumstances, he had the apparent authority to make the agreement that if the automobile, after inspection and examination, was not satisfactory, it could be returned, and the purchase price paid refunded to him. 2 C. J. 599; 1 Mechem on Agency, § 558; *Deering* v. *Thom,* 29 Minn. 120, 12 N. W. 350; *Oster* v. *Mickley,* 35 Minn. 245, 28 N. W. 710; *Dochtermann V. & E. Co.* v. *Fiss D. & C. H. Co.,* 155 App. Div. 162, 140 N. Y. Supp. 72; *Jesse French P. & O. Co.* v.

*Cardwell,* 114 Ga. 340, 40 S. E. 292; *Marion Mfg. Co.* v. *Harding,* 155 Ind. 648, 58 N. E. 194; *Warden B. & G. Co.* v. *Pischer,* 110 Wis. 363, 85 N. W. 968; *Eastern Mfg. Co.* v. *Brenk,* 32 Tex. Civ. App. 97, 73 S. W. 538.

From what has been said it follows that the motion for nonsuit was erroneously sustained. The judgment is reversed, and a new trial granted. Appellant to recover costs.

WEBER, C. J., and GIDEON and THURMAN, JJ., concur.

FRICK, J. (dissenting). I am unable to concur with my associates in reversing the judgment of the lower court. In view, however, of the limited time at my disposal, and for the reason that my views are fully stated in my former opinion on file, I shall not again state the reasons that impel me to withhold my approval at length.

In this connection I feel constrained to state, however, that in view that we are here dealing with a case where the vendor has authorized a delivery of an article previously sold upon the implied condition that the sight draft attached to the bill of lading be paid before delivery is made to the vendee, in my judgment the person upon whom the sight draft was drawn could not, without express authority from the vendor, enter into a contract with the vendee that in case the latter was not satisfied with the article delivered he should be repaid the purchase price. And in my judgment such is the case, although it be conceded that the person making the delivery was the agent of the vendor. The vendor, by attaching the sight draft to the bill of lading, clearly indicated that delivery could not be made without prepayment of the purchase price, and the agent could not, without authority from his principal, bind the latter by entering into a contract with the vendee by which the purpose of the vendor was entirely departed from or annulled. If the agent could have entered into such a contract and bound his principal thereby, then he could have disregarded the sight draft entirely and delivered the article without

payment. Such is not the law, and, in my judgment, there is no evidence in this record which would justify either a court or a jury to find that the agent who made the delivery was authorized to modify the contract of sale, so as to authorize the vendee, to return the article and receive back the purchase price. The vendee could have refused to accept the article, or, in case he did accept it, he nevertheless had a right of action for damages upon an express warranty if one was made, and if none was made then upon the warranty implied by law. In this case, however, there was an express warranty. In view of those remedies it is not necessary to vary or to strain the rule of law applicable to sales where a sight draft is attached to the bill of lading and delivery is not authorized without payment of the sight draft.

In conclusion, I beg to state that, ordinarily, in view that my associates have arrived at a conclusion that there is sufficient substantial evidence to warrant a finding that the person upon whom the sight draft was drawn had authority to modify the contract of sale, so as to require the vendor to repay the purchase price, I should yield to their judgment. In this case, however, in view of the whole record and the legal principles involved, I am unable to do so, and hence I am compelled to dissent.