277 P.2d 972

Don ADAMSON, Plaintiff and Appellant,

v.

UNITED MINE WORKERS of America, Defendant and Respondent.

No. 8161.

Supreme Court of Utah.

Dec. 21, 1954.

Allan E. Mecham, Elliott Lee Pratt, James L. Barker, for appellant.

Edward Sheya, Price, for respondent.

WORTHEN, Justice.

The evidence considered in the light most favorable to plaintiff fails to show an agency relationship between defendant International Union of the United Mine Workers

of America and the individuals who committed the alleged assault and battery and false imprisonment, for which plaintiff commenced this action.

The record shows that the action was originally filed in Salt Lake County to recover damages for the alleged torts which occurred during a labor dispute in Carbon County, Utah.

The defendant was named with no more specificity than the "United Mine Workers of America."

A motion for change of venue to Carbon County was filed, supported by an affidavit signed by one Harry Mangus, alleging, inter alia, that he was and had been an officer of the defendant for several years past.

The venue was changed to Carbon County, and process was again served on one Frank Sacco, with the return stating that he was the vice-president of the defendant.

It developed during the trial that the defendant is the International Union as distinguished from the District or Local Unions of the United Mine Workers of America.

While the evidence fairly reflects that fact that both Harry Mangus and Frank Sacco were officers of District 22 of the United Mine Workers, there is nothing in the record to show that either man was an officer, agent or employee of the International Union. When Harry Mangus stated in the affidavit supporting the motion for change of venue that he was an officer of the defendant, it is abundantly clear that at that time he and others were confused as to which organization was the defendant,— the International, the District, or the Local—, each of which is an autonomous group. The assumption by Mangus that the District Union was the party defendant was understandable since the inadequate designation of parties carries over to this appeal and since service was had on an officer of the District rather than International Union.

As the witnesses testified, defendant interposed frequent objections to testimony seemingly offered to support the existence of agency. The lower court pro forma reserved rulings on the objections until after plaintiff had presented all his evidence relative to the question of agency, at which point in the trial, the court granted defendant's motion to dismiss, holding as a matter of law that plaintiff failed to establish agency and that "plaintiff has failed to present any evidence which would tend to connect the defendant with the occurrences which the plaintiff alleges occurred on April 6, 1952."

Plaintiff cites the familiar rule from Goddard v. Lexington Motor Co., 63 Utah 161, 223 P. 340, 342, as follows:

"'When any evidence is adduced tending to prove the existence of a disputed agency, its existence or nonexistence is as a general rule a question of fact for the jury, aided by proper instructions from the court, even though the evidence is not full and satisfactory,

and in such cases it is error for the court to take the question from the jury by directing a verdict by instruction, by non-suit, or by sustaining a demurrer to the evidence.'"

While we agree with the rule, we must look to the facts upon which it is predicated. In the Goddard case, the evidence was rather complete, though conflicting, that agency existed, including, "direct and positive" proof that the individual allegedly an agent was a representative of defendant, acting in a manner indicating general agency existed.

The facts of the present case include no such framework indicative of agency. The evidence shows that the alleged torts were committed by a group of men at a time and in an area where a picket line was functioning. There is no evidence indicating the identity of the tort-feasors, or even whether they were involved in the labor dispute other than as officious volunteers.

Arnold Skinner, a witness for plaintiff, testified that he was a vice-president of the Wellington Local Union of the United Mine Workers of America; that he and Harry Mangus had, as spokesmen for the members of the local union, discussed the principles and purposes of the United Mine Workers, and had solicited membership therein from the employees of the Eastern Utah Coal Company who were on strike.

Mr. Skinner stated that the members of the local union who were employed at the Eastern Utah Coal Company upon their own initiative established and controlled the picket line, and that neither the District nor the International Union rendered financial assistance to the strikers or offered help of any kind.

Harry Mangus, another of plaintiff's witnesses, testified that he was a board member and vice-president of District 22 of the U. M. W. A. that neither he nor others involved had authority to represent the International Union.

Mr. Mangus testified further that the labor agreement which he helped to negotiate with Eastern Utah Coal Company was signed by him as Vice-President of District 22; that it was signed subject to the approval of the International Union; and that after the agreement was signed, he advised a company representative that "if I had any jurisdiction of any pickets I would remove them."

Shortly after the contract was signed the picketing ceased.

Otto C. Reichert and Ronald Reichert testified for plaintiff that they were operators of the Eastern Utah Coal Company; that in negotiations with Harry Mangus, who said he was representing the United Mine Workers of America, they were informed that no more coal would be produced until the mine was organized into U. M. W. A. At no time did either of the Reicherts testify that Mangus in reference to the United Mine Workers of America identify a particular entity of the tripartite union organization.

Ronald Reichert testified that after the labor agreement was signed, Harry Mangus "delegated I believe Skinner and Rice to round up the men so that we could go back to work in the morning."

Plaintiff admits on appeal that there was no direct evidence that the International Union authorized or controlled this picket line, but he contends that there was sufficient evidence from which it could fairly be inferred and hence was a jury question.

■ We believe that before the lower court could properly submit the question of agency to the jury, the burden was upon plaintiff to present facts in evidence which would sustain a verdict, and the evidence must do more than raise a conjecture or surmise that the ultimate fact is as alleged. The court in Toledo, St. L. & W. R. Co. v. Howe, 6 Cir., 191 F. 776, as quoted by this court in Valiotis v. Utah-Apex Min. Co., 55 Utah 151, 184 P. 802, 808, announced the rule as follows:

> " 'It [the substantial evidence in support of a material element] must be, as said Judge Severens, "something of substance and relevant consequence, and not vague, uncertain, or irrelevant matter not carrying the quality of 'proof' or having fitness to induce conviction." ' "

Plaintiff contends that the very nature of organization of the International Union is a sufficient indication of agency. However, plaintiff fails to define the scope of the agent's authority, and, indeed, does not clearly designate just who is or what constitutes the agent or servant acting within the scope of his or its authority and employment.

The Constitution of the International Union does little more than confirm its autonomy.

Plaintnff's case is made no stronger by the authorities involving the International Union of the United Mine Workers of America as a party. See United Mine Workers of America v. Patton, 4 Cir., 211 F.2d 742; United Construction Workers v. Laburnum Construction Corporation, 194 Va. 872, 75 S.E.2d 694. The evidence contained in those cases, reviewed on appeal, serves by marked difference to emphasize the absence of appropriate proof in plaintiff's case.

■■ Contrary to plaintiff's contention, there is no implied agency by ratification even though John L. Lewis, representing the International Union, ultimately signed the agreement which bore the prior signatures of Mangus and the Reicherts, and, we may assume, the International Union received some benefit from the bargain. This is true since the plaintiff did not sustain the burden of introducing some substantial evidence tending to show the facts upon which a ratification must be predicated. 2 Am.Jur. pp. 175–176, Sec. 220.

The judgment of the lower court must be affirmed with costs to respondent.

McDONOUGH, C. J., and CROCKETT, HENRIOD and WADE, JJ., concur.