## Staunton

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO v. ROSCOE HUMPHREYS.

August 31, 1962.

Record No. 5435.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*Beecher E. Stallard,* for the plaintiff in error.

*George M. Warren, Jr. (R. Russell Myers,* on brief), for the defendant in error.

I'ANSON, J., delivered the opinion of the court.

This is an appeal by the United Brotherhood of Carpenters and Joiners of America, AFL-CIO, herein referred to as "United Brotherhood," from a judgment in the amount of $11,000 entered against it on two verdicts of a jury in an action for damages brought by the plaintiff, Roscoe Humphreys, against the defendants United Brotherhood; Lumber and Sawmill Workers Union No. 3092 of Bristol, Virginia, herein referred to as the "local union"; and D. R. Parks; Clayton Price; Halvie E. Strouth; and H. Chase Strouth, union members, for injuries sustained as a result of two assaults committed on the plaintiff by Parks, Price and the Strouth brothers during the time the employees of Bristol Door and Lumber Company, Inc., of Bristol, Virginia, hereinafter referred to as "Bristol Door," were on strike. The action against the Strouths was abated for lack of service of process, and the local union, Parks and Price did not seek a writ of error to the judgments entered against them.

The assignments of error relied on by the United Brotherhood are that the trial court erred (1) in not striking plaintiff's evidence and entering judgment for it on the grounds that no agency relationship had been shown to exist between it and the plaintiff's assailants, and even if they were agents of United Brotherhood they were not acting within the scope of their authority in assaulting Humphreys; and (2) in granting an instruction which included language telling the jury that the United Brotherhood could be held liable if they found from a preponderance of the evidence that it ratified the acts of the plaintiff's assailants.

The evidence stated, under the established rule, in the light most favorable to the plaintiff shows that the plaintiff, Parks, Price and the Strouth brothers were employees of Bristol Door and members of the Lumber and Sawmill Workers Union No. 3092 of Bristol, Virginia, a local union affiliated with, chartered by, and a component part of the United Brotherhood, an international labor organization consisting of 3000 local unions with a membership of more than 800,000.

The local unions are subject to and governed by the general laws of the United Brotherhood and local by-laws approved by it. Members of local unions are required to pay monthly dues, one-half of which is paid to the United Brotherhood as a per capita assessment. The funds derived from the assessment are used to defray the operational expenses of the United Brotherhood and to pay wage benefits to members of local unions when they are on strike. The United Brotherhood has the power to discipline or expel members of local unions for violations of its mandates. Its general executive board has the power to authorize and sanction strikes by local unions, and the members of the locals receive financial and other support from United Brotherhood when a strike has been sanctioned by it. The general president has the power to deputize representatives to assist the local unions where labor disputes have arisen.

The local union was encountering difficulty in obtaining a new contract with Bristol Door, and upon its request the general president of United Brotherhood sent D. A. Dishner to Bristol as his representative to assist in the negotiations and to advise the local union on questions that might arise in connection therewith. A. O. McKinney, also a field representative of the general president, assisted Dishner and the local union committee in the negotiations, which lasted several weeks, but they were unsuccessful in their efforts to obtain a new contract.

When the plaintiff reported for work on the morning of July 29, 1958, he found that many employees were striking and forming a picket line around the Bristol Door plant, and he immediately joined them. That night a meeting of the union members was held to discuss and formally approve the strike. Dishner and McKinney addressed the meeting, advised the members how to organize their pickets, and told them that the United Brotherhood would pay strike wages during the time they were walking the picket line and supporting the strike. McKinney also prepared and posted written instructions for their guidance.

For a period of five weeks the plaintiff performed picket duty on regular shifts around the premises of Bristol Door, and he, along with others performing such duty, was paid strike wages from monies supplied by United Brotherhood. Dishner was usually present while the picketing was carried on, and he frequently conferred with the participants while they were in the picket line. During this period negotiations with Bristol Door continued and the local union held one or two meetings each week with either McKinney or Dishner attending and addressing the members.

Reports on the contract negotiations, the progress of the strike, and the business conducted at the local union meetings were sent to United Brotherhood each week.

Sometime during the day of Thursday, August 28, 1958, the plaintiff stated to fellow union members that he was going to abandon his picketing and return to work. That night, at a meeting of the local union at which the plaintiff, Parks, Price, the Strouth brothers, and the two representatives of United Brotherhood were in attendance, McKinney addressed the members and he was quoted by the plaintiff as having said:

"Well, he said, 'Fellows, I hear they's some talk that some of you wants to go back in to work up there.' Said, 'Work, if that company finds out we are weakening, we won't get a thing,' and said, 'If any of them does go back to work, all I can tell you is to *entertain them on the way backward and forth.*' And said, 'Watch what you say when you *entertain them;* some of them might have a bug planted on them.'" (Emphasis added.)

The following Tuesday, September 2, the plaintiff reported for work at Bristol Door, and at the end of the work day he obtained a ride to a service station where he waited to take a bus for home. In the meantime Parks and Price had left the picket line and pursued the plaintiff to the service station in an automobile operated by Halvie Strouth. The plaintiff was asked, "What did you go back for today?" and Parks and Price then assaulted him. After committing the assault they resumed their places in the picket line.

The next morning, September 3, the plaintiff reported for work and his employer sent him to the hospital where he was treated for the injuries received the previous afternoon.

After leaving the hospital that afternoon the plaintiff boarded a bus for home, and as he was getting off at his home Halvie Strouth, who was also a passenger on the bus, knocked him to the ground and pushed him underneath a wheel of the bus which ran over his

hand, breaking a finger. Chase Strouth arrived on the scene and joined in the affray.

The strike continued until November 11, 1958, and shortly there-after unfair labor practice charges were filed against Bristol Door in the name of the local union and the United Brotherhood. The complaint was signed by McKinney as the representative of both United Brotherhood and the local union.

In support of United Brotherhood's contention that the evidence was not sufficient to justify the jury's finding that the plaintiff's assailants were agents of United Brotherhood and were acting within the course and scope of their agency, it relies heavily on and quotes extensively in its brief from the decision of the Supreme Court in *United Mine Workers* v. *Coronado Coal Co.*, 259 U. S. 344, 66 L. ed. 975, 42 S. Ct. 570, 27 A. L. R. 762, and on subsequent appeal 268 U. S. 295, 69 L. ed. 963, 45 S. Ct. 551. It also cites *Adamson* v. *United Mine Workers of America*, 3 Utah 2d 37, 277 P. 2d 972; *United Construction Workers* v. *Haislip Baking Co.* (4 Cir. Va.), 223 F. 2d 872, cert. den. 350 U. S. 847, 100 L. ed. 754, 76 S. Ct. 87; and *Abernathy* v. *Romaczyk*, 202 Va. 328, 117 S. E. 2d 88. In our opinion the cases relied on are distinguishable on the facts from the present case.

In the *Coronado* case, *supra*, the evidence shows that the district union called the strike, made all the preparations for it, and paid all the bills incident thereto; that a specific stipulation in the laws governing the international and district bodies provided that the district would bear the responsibility of a strike called by it unless expressly assumed by the international; and that the international union did not aid in its maintenance or do anything to indicate that it was assuming the responsibility. On that evidence the Court held that there was no liability on the international for damages arising out of the strike. But the Court said, "If the international body had *interfered*, or if it had assumed liability by ratification, different questions would have arisen." (Emphasis added.) 259 U. S. at p. 395, 42 S. Ct. at p. 578.

In the *Haislip* case, *supra*, an action was brought by the employer to recover damages under § 301 of the Labor-Management Relations Act (29 U. S. C. A., § 185a) against the national labor union for the alleged breach of a collective bargaining contract. The Court held that the national labor union did not become liable for damages resulting from a "wildcat" strike called by the local union, which was wholly unauthorized and unsupported by the national union,

merely because it had entered into a collective bargaining agreement with the employer requiring that grievances be settled by procedures provided for in the contract.

In the *Adamson* case, *supra*, the Court held that the action could not be maintained against the national union for damages for an assault and battery committed on a picket line since the evidence showed that the local union initiated the strike, and organized and controlled the picket line. The national union neither rendered financial assistance nor participated in any way. Moreover, there was no evidence that the tort-feasors were the parties involved in the labor dispute.

In the *Abernathy* case, *supra*, a truck driven by one of Abernathy's employees collided with an automobile in which Mrs. Romaczyk was a passenger and an argument arose between the drivers of the vehicles as to who was at fault, which was followed by a brief scuffle. Before the vehicles were moved another Abernathy truck arrived on the scene and bumped the standing vehicles. This caused another scuffle. In attempting to separate the parties Mrs. Romaczyk was injured and she recovered a judgment for damages. In setting aside the judgment against Abernathy we held that the truck driver, while participating in the fracas, had abandoned the business of his master and as a matter of law was not acting within the scope of his employment, since the argument as to who had caused the collision had ended and a new fracas, to gratify the personal feelings of Abernathy's driver, had begun at the time Mrs. Romaczyk was assaulted.

A principal is responsible for the willful or malicious acts of his agent committed within the scope and course of his employment. The test of the liability of the principal for the tortious acts of his agent is not whether the tortious act itself is a transaction within the ordinary course of the business of the principal, or within the scope of the agent's authority, but whether the service itself in which the tortious act was done was within the ordinary course of such business or within the scope of such authority. *Henry Myers & Co.* v. *Lewis*, 121 Va. 50, 71, 92 S. E. 988, 994, 995; *Davis* v. *Merrill*, 133 Va. 69, 77, 78, 112 S. E. 628, 631; *Tri-State Coach Corp.* v. *Walsh*, 188 Va. 299, 304-308, 49 S. E. 2d 363, 366; 2 Am. Jur., Agency, § 360, pp. 279, 280; 35 Am. Jur., Master and Servant, § 560, pp. 994, 995; 3 C. J. S., Agency, § 255, pp. 186-189; 57 C. J. S., Master and Servant, § 555, pp. 266, 267.

In *Davis* v. *Merrill*, *supra*, this Court quoted with approval from

2 Mechem on Agency, 2d ed., § 1960, the following definition of "scope of employment":

" 'In many cases, no better definition can be given than the words themselves suggest. But, in general terms, it may be said that an act is within the scope of the employment if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill-advisedly, with a view to further the master's interests, *or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business,* and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.' " (Emphasis added.) 133 Va. at p. 77, 112 S. E. at pp. 630, 631.

A field representative of an international labor organization engaged in union organizational activities, negotiations of contracts, and settling grievances between employers and members of local unions, which are mere divisions of the international union, is engaged in the business of both the international and local unions so as to render both responsible for acts done by him within the scope and course of his employment. *United Mine Workers* v. *Patton* (4 Cir. Va.), 211 F. 2d 742, 746, 47 A. L. R. 2d 850, 857, cert. den. 348 U. S. 824, 99 L. ed. 649, 75 S. Ct. 38; 31 Am. Jur., Labor, § 136, p. 494; 87 C. J. S., Trade Unions, § 21, pp. 783, 784. In *United Constr. Wkrs.* v. *Laburnum,* 194 Va. 872, 886, 75 S. E. 2d 694, 704, affirmed 347 U. S. 656, 98 L. ed. 1025, 74 S. Ct. 833, we held that the very nature of the organization of the international union was sufficient to show that the district organization was an arm of the international, and an agency relationship existed between the two bodies.

■ Where an agency relationship has been established, the burden is on the principal to prove that the agent was not acting within the scope of his authority when he committed the acts complained of, and when the evidence leaves the question in doubt it becomes a factual issue for determination by the jury. *Alvey* v. *Butchkavitz,* 196 Va. 447, 453, 84 S. E. 2d 535, 539; *Slaughter* v. *Valleydale Packers,* 198 Va. 339, 343, 94 S. E. 2d 260, 263, 264.

■ When the above authorities are applied to the facts of the present case, we are of opinion that there was ample evidence for the jury to consider whether Price, Parks and the Strouth brothers were acting as agents of United Brotherhood and within the course and scope of their authority in assaulting the plaintiff.

It is true that there was no evidence that the executive board of United Brotherhood adopted a formal resolution ordering or sanctioning the strike. However, there is evidence that Dishner and McKinney were agents of United Brotherhood and, with its knowledge and approval, were in command of the strike and the meetings of the local union. McKinney and Dishner advised the members of the local union how to conduct the strike and set up the picket lines. McKinney, with the approval of Dishner, directed them to "entertain" union members who returned to their jobs while the strike was in progress. If United Brotherhood had not sanctioned and approved the strike it would not have supported it financially.

Under the organizational structure of the international union, the local union was an arm of United Brotherhood. The members of the local union were members of United Brotherhood and its agents in conducting the strike.

It was in the interest of United Brotherhood that none of the strikers return to work until a satisfactory contract could be obtained from Bristol Door. Failure to obtain such a contract would cause the ultimate dissolution of the local union, thereby depriving United Brotherhood of revenue.

Even though the assaults on the plaintiff were ill advised, Price, Parks and the Strouth brothers followed the instructions of a United Brotherhood representative. The assaults were not committed to satisfy any personal motives of the assailants, but were caused by some emotion which naturally grew out of and was incident to the performance of strike activities. Hence, it was for the jury to say from the evidence whether the plaintiff's assailants were agents of United Brotherhood and if they were acting within the scope of their authority.

It is next said that the court erred in granting an instruction which told the jury that if they believed from a preponderance of the evidence that United Brotherhood ratified the acts of Price, Parks and the Strouth brothers it could be held liable for the assaults. United Brotherhood says that there was no evidence of ratification to support such instruction.

It is true that there was no ratification by United Brotherhood of the acts of the tort-feasors. However, the verdicts of the jury were not based on ratification. The jury specifically found in one of their verdicts that Price and Parks were "acting as agents of * * * United Brotherhood." It may be concluded that the second verdict would have contained the same quoted language if process had been

served on the Strouth brothers. Since the jury specifically found that the tort-feasors were acting as agents of United Brotherhood, the error complained of was harmless. Moreover, United Brotherhood requested and obtained an instruction which told the jury that they must find for United Brotherhood if they believed that the tort-feasors were not its agents, "unless you further believe that the defendant [United Brotherhood] ratified their acts." Thus it cannot complain of the language to the same effect used in the plaintiff's instruction.

For the reasons stated, the judgment is

*Affirmed.*