SMITH–JOHNSON MOTOR
CORPORATION t/a Smith
Corner Motors, Plaintiff,

v.

HOFFMAN MOTORS CORPORATION
and Bavarian Motor Works,
Defendants.

Civ. A. No. 74–431–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Nov. 3, 1975.

L. David Lindauer, J. W. Jones, Brenner & Jones, Portsmouth, Va., for plaintiff.

Paul M. Lipkin, Norfolk, Va., for defendant Hoffman Motors Corp.

R. Kenneth Wheeler, Douglas W. Davis, Hunton, Williams, Gay & Gibson, Richmond, Va., for Bavarian Motor Works.

## MEMORANDUM ORDER

KELLAM, Chief Judge.

Seeking damages for alleged breach of a franchise agreement, and for violation of the provisions of 15 U.S.C. § 1221 and subsequent sections of said Chapter 27 entitled "Automobile Dealer Suits Against Manufacturers," and Section 46.-1–515, and subsequent sections of Chapter 7 of the Code of Virginia, entitled "Motor Vehicle Dealers," plaintiff instituted this action against Hoffman Motors Corporation (Hoffman) and Bavarian Motor Works (Bavarian). Attached to the complaint is a copy of the franchise agreement between plaintiff and Hoffman. Bavarian is not a signatory of that agreement, but plaintiff alleges Hoffman was acting as agent for Bavar-

ian, and that because certain benefits accrue to Bavarian, it is bound thereby.

Bavarian filed request for admissions by plaintiff and propounded to it certain interrogatories. Bavarian also filed an affidavit of one Doctor Hans Joachim Holzapfel in charge of the "international section of the legal department of Bavarian . . ., and . . . familiar with its affairs." The affidavit asserts that title to all of the products sold by Bavarian pass to the purchaser outside of the United States, and costs of transportation, insurance, etc., are borne by the purchaser; that it has no contract with any person or corporation in Virginia; that Hoffman purchased all of the cars which were imported into the United States; that no parent-subsidiary or other agency relationship existed between Hoffman and Bavarian, and they are completely independent of each other; that Hoffman sells the cars it imports to dealers, and Bavarian is not a party to any of the agreements or sales; that Hoffman is not an agent of Bavarian.

In the request for admissions, plaintiff answered that it had "no knowledge of what relationship existed between" Bavarian and Hoffman, and admitted Bavarian was not a signer of the agreement between plaintiff and Hoffman.

Bavarian has moved for summary judgment based upon the pleadings, the answers to request for admissions and to interrogatories, together with the above referred to affidavit, the agreement between it and Hoffman, and the agreement between plaintiff and Hoffman.

The second question before the Court arises out of the motion of Hoffman to strike plaintiff's request for a jury trial. The Dealer Sales Agreement, paragraph 25, attached to the complaint filed herein, entitled "Waiver of Jury," reads:

Importer and Dealer both acknowledge and agree that any controversy which may arise under this agreement or the relationship established thereby would be based upon difficult and complicated issues and therefore the parties agree that any lawsuit growing out of any such controversy will be tried in a court of competent jurisdiction by a judge sitting without a jury.

I

In dealing with the motion for summary judgment, we commence with the clear mandate that summary judgment is not to be granted if the record shows there is a genuine issue as to any material fact, and the burden of showing the absence of any genuine issue for trial is on the moving party, and the record must be viewed in the light most favorable to the opposing party. *Adickes v. Kress & Company,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142, 154 (1970). But, where there is "no genuine issue as to any material fact, summary judgment" is the proper vehicle for determination of the case. *Norfolk & Western Railway Co. v. Anderson's-Black Rock, Inc.,* 350 F.2d 917, 919 (4th Cir. 1965); *Cram v. Sun Insurance Office, Ltd.,* 4 Cir., 375 F.2d 670.

Rule 56 of the Federal Rules of Civil Procedure, subsection (c), provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." Further, subsection (e) provides that "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, <u>must set forth specific facts showing that there is a genuine issue for trial</u>." (underscoring added). As the Supreme Court pointed out in *First National Bank v. Cities Service,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569, 592 (1968), "What Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him."

In *Stansifer v. Chrysler Motors Corporation,* 487 F.2d 59 (9th Cir. 1973), dam-

ages were sought for alleged violation of the Federal and State Automobile Dealers' Day in Court Act. Among other things, Chrysler contended that absence of a written franchise with Stansifer precluded any recovery against it. Summary judgment was entered for Chrysler after reciting the fact that summary judgment should not be entered where there is a genuine issue in dispute. The Court at page 63 said:

> Where, however, "on the basis of the materials presented by his affidavits, the moving party, if at trial, would be entitled to a directed verdict unless contradicted, it rests upon the opposing party at least to specify some evidence to show that such contradiction is possible. * * * The burden of coming forward with specific controverting facts shifts to the opponent. * * * It is his duty to expose the existence of a genuine issue which will prevent the trial from being a useless formality." *Doff v. Brunswick Corporation,* 372 F.2d 801, 805 (9 Cir. 1967), cert. denied, 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed.2d 71 (1967).

Continuing, the Court said that the Federal Act [15 U.S.C. §§ 1221–1225] created a new cause of action in favor of a franchised dealer against the manufacturer for damages sustained by reason of the failure of the manufacturer to act in good faith in "performing or complying with any of the terms or provisions of the franchise," and that it was "obvious that the Act does not apply until a manufacturer-dealer relationship has been created." Further, the Court said:

> The term "franchise" is defined in 15 U.S.C. § 1221(b) as "the written agreement or contract between any automobile manufacturer engaged in commerce and any automobile dealer which purports to fix the legal rights and liabilities of the parties to such agreement or contract." It is clear that without a written franchise there can be no claim or cause of action under the Act.

There was no written agreement between Chrysler and Stansifer. The written agreements were between Chrysler as manufacturer and Fisher as distributor and between Fisher as distributor and Stansifer as dealer. Nor is there any evidence that Chrysler had any direct dealings with Stansifer prior to the termination of the dealer agreement between Fisher and Stansifer.

Appellant contends that Fisher was a "straw man" or agent of Chrysler, and that the agreements between Fisher and Stansifer were in fact between Chrysler and Stansifer. It is true, as appellant argues, that Chrysler could not "avoid requirements of the Dealer Franchise Act relating to manufacturers by merely setting up a 'straw man' between it and the dealer and then stating that it had no franchise with any dealer * * *." The district court found as a matter of law, however, that "the facts in this case in no way support a claim that Jim Fisher was a straw man or an agent of the Chrysler Motors Corporation * * *." We agree.

Although the plaintiff asserts Hoffman was the agent of Bavarian, such assertion is without support in the facts of the case. This very issue was dealt with in the *Stansifer* case. Without further citations, it is sufficient to say this issue is governed by that decision.

Here, there is no franchise agreement or dealer-manufacturer agreement between plaintiff and Bavarian, either written or oral. Nor is there any type of agreement between them. Under the provisions of 15 U.S.C. § 1222, an automobile dealer may bring suit against a manufacturer engaged in commerce, and may recover damages "by reason of the failure of said automobile manufacturer . . . to act in good faith in performing or complying with any of the terms or provisions of the franchise . . . ." Nothing in the agreement between plaintiff and Hoffman or in the agreement between Hoffman and Bavarian, impliedly or expressly authorized or empowered Hoffman to act for or bind

Bavarian. The language is to the contrary. While plaintiff alleges agency, the agency is denied by affidavit, thus putting plaintiff to proof. In fact, in answer to the request for admissions, plaintiff said it had no knowledge of the relationship between Hoffman and Bavarian.

An action similar to the one here was decided in *York Chrysler-Plymouth, Inc. v. Chrysler Credit Corporation,* 447 F.2d 786 (5th Cir. 1971). There Chrysler Corporation manufacturers automobiles and sells them to Chrysler Motors, its wholly owned sales subsidiary. Chrysler Motors had sole responsibility for distribution and marketing, and it alone enters into franchise contracts with dealers. In that case, after holding each of the companies fell within the definition of manufacturers as defined in the Act, 15 U.S.C. § 1221(a), and that either could be sued for failure to act in good faith in performing a contract, the Court said at page 791:

> However, there being no showing that would make either responsible for the acts of the other on an agency theory, and the facts indicating that they are separate legal entities each operating in its own sphere, only the one which has entered into a franchise agreement could be held accountable for performing or complying with it. Since Chrysler Corporation was not a party to the franchise and had no legal responsibility to plaintiffs for the acts of Chrysler Motors, which signed the franchise, it should have been dismissed from the suit and the judgment should not have been entered against it. *R.A.C. Motors, Inc. v. World-Wide Volkswagen Corp.,* 314 F.Supp. 681 (D.N.J.1970); *Reliable Volkswagen Sales & Service Co. v. World-Wide Auto Corp.,* 216 F.Supp. 141 (D.N.J.1963); *Cf., Southern Rambler Sales, Inc. v. American Motors Corp.,* 375 F.2d 932 (5th Cir. 1967), cert. den. 389 U.S. 832, 88 S.Ct. 105, 19 L.Ed.2d 92.

In *Lawrence Chrysler-Plymouth, Inc. v. Chrysler Corporation,* 7 Cir., 461 F.2d 608, the Court pointed out the cause of action created by the Federal Automobile Dealers Act was a new cause of action for breach of contract, and said that "in view of the express limitation contained in the statute oral representations or promises, not a part of the written franchise agreement or contract may not form the basis of a claim of bad faith, coercion or intimidation, under the Act." (citations omitted).

■ Nor are there any facts in this case which would authorize or justify plaintiff in maintaining the action against Bavarian under the provisions of the Virginia Motor Vehicle Dealers Act or the common law. The Virginia Act, 46.1–516, defining "Franchise" says it "means a written contract of agreement."

■ Plaintiff also attempts to assert a claim against Bavarian for an alleged defamatory statement. It says in the complaint that defendants "wrongfully made slanderous and insulting statements to customers of plaintiff and have damaged the reputation of plaintiff." In its "More Definite Statement" filed pursuant to the Order of the Court, plaintiff said "It is not known who with Hoffman Motors made the statement but Patt Stoneman . . . stated that he had 'come to understand from Hoffman Motors in New Jersey that you do not have a very reputable bookkeeping staff' in reference to plaintiff's bookkeepers."[1] It is not alleged upon what basis or statements Stoneman reached his conclusion, or came to "understand," or whether such an understanding or conclusion was proper or one justified from the facts. But regardless of these issues, there is nothing to suggest that Hoffman was then acting as agent, servant, employee or otherwise, for Bavarian. In fact, it is uncontradicted, that no such relationship existed between Hoffman

---

1. We do not here deal with whether such language is, in fact, actionable or slanderous, or whether a class is subject to slander as here used.

and Bavarian. Too, it is clear in Virginia that a principal is only liable for those acts of an agent which it has expressly or impliedly authorized the agent to perform. It is a fiduciary relation resulting from consent for one to act for another on his behalf and subject to his control. Control·of the conduct of the agent is vital. *See Meek v. Graybeal,* 195 Va. 381, 78 S.E.2d 593; *Appalachian Power Company v. Robertson,* 142 Va. 454, 129 S.E. 224; *Stansifer v. Chrysler Motors Corporation, supra,* citing Restatement of the Law of Agency, 2d Edition. To bind a principal for the willful and malicious act of his agent, it must be shown such an act was in furtherance of the principal's business, or done in the ordinary course of the business of the principal or within the scope of the agent's authority. *Union Brotherhood of Carpenters and Joiners of America, A.F.L.–C.I.O. v. Humphreys,* 203 Va. 781, 127 S.E.2d 98, *cert. denied* 371 U.S. 954, 83 S.Ct. 509, 9 L.Ed.2d 501; *Tri-State Coach Corp. v. Walsh,* 188 Va. 299, 49 S.E.2d 363. Too, in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Supreme Court held that a State may not permit recovery of punitive damages where liability is not based on knowledge of falsity or reckless disregard for the truth, and Virginia does not permit recovery of punitive damages for slanderous utterance of an agent unless the principal has either authorized or directed the utterance or with full knowledge of the utterance has ratified it. *W. T. Grant Co. v. Owens,* 149 Va. 906, 141 S.E. 860; *Hines v. Gravins,* 136 Va. 313, 112 S.E. 869, affirmed on rehearing 136 Va. 313, 118 S.E. 114, *cert. denied* 265 U.S. 583, 44 S.Ct. 458, 68 L.Ed. 1191.

 There being no sufficient allegation or showing of agency, or authorization, or ratification by Bavarian, there is no basis upon which plaintiff could recover on this issue from Bavarian.

The motion of Bavarian for summary judgment is GRANTED and it is DISMISSED as a party defendant.

## II

The second issue deals with the motion of Hoffman to strike the plaintiff's request for trial by jury. In the franchise agreement between plaintiff and Hoffman, paragraph 25, above set out, the parties contract and agree that any "lawsuit growing out of any . . . controversy will be tried in a court of competent jurisdiction by a judge sitting without a jury." The question presented is whether such a waiver is binding.

 While the Federal Constitution, as well as the Constitution of Virginia, guarantees a right of trial by jury, there seems little question that such a right may be waived. But how may the waiver be made and when? May it be waived by a prior written agreement?

By analogy, Congress has provided in the Arbitration Act, 9 U.S.C. § 2, that "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, . . . .." This Act has been held constitutional. *Prima Paint Corporation v. Flood & Conklin,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270. Too, by analogy, the Supreme Court held in *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513, 521 (1972), that the provisions of a contract fixing the forum in which actions might be brought to litigate disputes is binding on the parties unless the opposing party can meet the heavy burden of showing that its enforcement would be unreasonable, unfair or unjust. The Court after referring to the language in *National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964), holding a party may contract and agree to be sued in a jurisdiction where he cannot be found, 407 U.S. at page 11, 92 S.Ct. at 1914, 32 L.Ed.2d at 521, said:

This approach is substantially that followed in other common-law countries including England. It is the view advanced by noted scholars and that

adopted by the Restatement of the Conflict of Laws. It accords with ancient concepts of freedom of contract and reflects an appreciation of the expanding horizons of American contractors who seek business in all parts of the world. Not surprisingly, foreign businessmen prefer, as do we, to have disputes resolved in their own courts, but if that choice is not available, then in a neutral forum with expertise in the subject matter. Plainly, the courts of England meet the standards of neutrality and long experience in admiralty litigation. The choice of that forum was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts.

\* \* \* \* \* \*

There are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, should be given full effect. In this case, for example, we are concerned with a far from routine transaction between companies of two different nations contemplating the tow of an extremely costly piece of equipment from Louisiana across the Gulf of Mexico and the Atlantic Ocean, through the Mediterranean Sea to its final destination in the Adriatic Sea.

\* \* \* \* \* \*

Manifestly much uncertainty and possibly great inconvenience to both parties could arise if a suit could be maintained in any jurisdiction in which an accident might occur or if jurisdiction were left to any place where the *Bremen* or Unterweser might happen to be found. The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting. There is strong evidence that the forum clause was a vital part of the

agreement, and it would be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of the forum clause figuring prominently in their calculations. Under these circumstances, as Justice Karminski reasoned in sustaining jurisdiction over Zapata in the High Court of Justice, "[t]he force of an agreement for litigation in this country, freely entered into between two competent parties, seems to me to be very powerful."

In *National Rental, supra,* a contract between a citizen of Michigan and a citizen of New York provided that any action growing out of the contract should be brought in New York and named a person as agent for purposes of accepting service of any process. In holding such contract provision valid and binding, the Court said 375 U.S. at page 315, 84 S.Ct. at 414, 11 L.Ed.2d at 357:

> The purpose underlying the contractual provision here at issue seems clear. The clause was inserted by the petitioner and agreed to by the respondents in order to assure that any litigation under the lease should be conducted in the State of New York.

\* \* \* \* \* \*

And it is settled, as the courts below recognized, that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether. See, e. g., *Kenny Construction Co. v. Allen,* [101 U.S.App.D.C. 334], 248 F.2d 656 (1957); *Bowles v. Schmitt & Co., Inc.,* 170 F.2d 617 (C.A.2d Cir. 1948); *Gilbert v. Burnstine,* 255 N.Y. 348, 174 N.E. 706 (1931).

Earlier in *Bank of Columbia v. Okely,* 17 U.S. (4 Wheat.) 235, 4 L.Ed. 559, in dealing with the act of a state giving a bank right of summary process, the result was to deny the party a right to trial by jury guaranteed by the United States Constitution and the Constitution of Maryland. In holding such a provi-

sion valid, the Court said at page 243, 4 L.Ed. at page 561:

But, to constitute particular tribunals for the adjustment of controversies among them, to submit themselves to the exercise of summary remedies, or to temporary privation of rights of the deepest interest, are among the common incidents of life. Such are submissions to arbitration; such are stipulation bonds, forthcoming bonds, and contracts of service. And it was with a view to the voluntary acquiescence of the individual, nay, the solicited submission to the law of the contract, that this remedy was given. By making the note negotiable at the bank of Columbia, the debtor chose his own jurisdiction; in consideration of the credit given him, he voluntarily relinquished his claims to the ordinary administration of justice, and placed himself only in the situation of an hypothecator of goods, with power to sell on default, or a stipulator in the admiralty, whose voluntary submission to the jurisdiction of that court subjects him to personal coercion.

It seems clear that contractual provisions waiving trial by jury in civil actions are neither illegal nor contrary to public policy. *McCarthy v. Wynne,* 126 F.2d 620 (10th Cir. 1942), *cert. denied* 317 U.S. 640, 63 S.Ct. 31, 87 L.Ed. 515; *Northwest Airlines v. Air Line Pilots Assn.,* 373 F.2d 136 (8th Cir. 1967); *Seligson v. Plum Tree, Inc.,* 361 F.Supp. 748 (E.D.Pa.1973); *Universal Auto Sales Corporation v. Eastern Auto Distributors, Inc.,* Civil Action No. 75–34–NN (E.D.Va.1975); Annotation, Validity and Effect of Contractual Waiver of Trial by Jury, 73 A.L.R.2d 1332, 33, and cases there cited.

No good cause being shown against the enforcement of the contract provision to waive the right to a trial by jury, the motion to strike the request for a jury trial in this action is GRANTED, and this case is ORDERED to proceed to trial without a jury.