## CIRCUIT COURT OF ALBEMARLE COUNTY

Mary Shifflett
and Diane Thacker

v.

Food Lion, Inc.,
and Pierre Gardner

May 22, 1998

Case No. CL98-7298

BY JUDGE PAUL M. PEATROSS, JR.

This matter comes before the Court on the demurrers filed by Defendant Pierre Gardner and Defendant Food Lion, Inc., to the Motion for Judgment herein filed. Oral argument was heard on the demurrers on May 7, 1998, and the Court took the demurrers under advisement to consult the legal authority cited.

The demurrers are based in whole or in part on the following grounds:

1. The Amended Motion for Judgment fails to state a cause of action for intentional infliction of emotional distress.

2. The Amended Motion for Judgment fails to state a cause of action for gross insult.

3. The Amended Motion for Judgment fails to state a cause of action against Defendant Food Lion, Inc., based on vicarious liability.

### Facts Alleged in Amended Motion for Judgment

Mary Shifflett was born on January 3, 1957, and is a resident of the Commonwealth of Virginia; Diane Thacker was born on September 3, 1942, and is a resident of the Commonwealth of Virginia. Pierre Gardner is a

resident of the Commonwealth of Virginia; and Food Lion, Inc., is a foreign corporation licensed to do business in the Commonwealth of Virginia.

Food Lion operates store number 253 located at the Pantops Shopping Center in Charlottesville, Virginia (hereinafter "the Pantops store") and employed Mr. Gardner as a bagger in this store at the time relevant to this suit.

On or about July 31, 1997, at approximately noon, Plaintiffs were customers at the Pantops store. While using the restroom facilities and, accordingly, in a state of partial undress, Plaintiffs observed Mr. Gardner looking down at them from the ceiling of the women's restroom. Mr. Gardner had been directed to collect bottles and other trash from above the ceiling of the men's room at the Pantops store.

Ms. Shifflett's immediate reaction to Mr. Gardner's actions was anxiety, anger, and fear of sexual assault. She also felt tightness in her chest, and this sensation added to her fear because she has a history of heart problems for which she receives disability payments. After reporting Mr. Gardner's actions to the management of the Pantops store, she again became embarrassed and angry when she realized that the Pantops management did not intend to discipline Gardner. She was physically ill for one to two days after the incident. Approximately one week after the incident, she inadvertently urinated in her clothing because of her reluctance, due to Gardner's actions, to use the public restroom at another grocery store. She has also endured after-effects, including becoming nervous when thinking of the event, fear and unwillingness to use other public restrooms leading to great discomfort when out in public, and a loss of trust in the safety of all businesses.

Ms. Thacker's immediate reaction to Mr. Gardner's actions was also embarrassment, anxiety, anger, and fear of sexual assault. She was nauseous for 30 to 45 minutes after the incident. She also endures after-effects, including fear and unwillingness to use public restrooms and experiences anxiety at the prospect of going out in public due to her fear that she will need, but be unable, to use the restroom at a public place. When going out in public, she refrains from taking the medicine with a diuretic effect to lessen the chance that she will have the urge to use the restroom. The absence of this medicine in her system causes her to experience shortness of breath and other uncomfortable side effects. On certain nights, she cannot sleep due to her recollection of the incident. She is also inconvenienced because she finds herself unable to patronize the Pantops store any longer.

*Discussion of Authority*

A. *Plaintiffs' Claim for Intentional Infliction of Emotional Distress*

Plaintiffs, in oral argument before the Court and in their brief have argued that their amended complaint adequately pleads a cause of action for intentional infliction of emotional distress according to the elements set forth in *Womack v. Eldridge,* 215 Va. 338 (1974). These elements are:

(1) The wrongdoer's conduct was intentional or reckless ... .
(2) The conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality ... .
(3) There was a causal connection between the wrongdoer's conduct and the emotional distress.
(4) The emotional distress was severe.

*Id.* at 342. Defendants' demurrer contests the second and fourth elements.

The Virginia Supreme Court has consistently advised caution in considering claims involving emotional distress. *See Ruth v. Fletcher,* 237 Va. 366 (1989), and cases cited therein. Indeed, such torts have been declared "not favored" in the law. *Id.* at 373. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White,* 241 Va. 23, 27 (1991) (*quoting* Restatement (Second) of Torts § 46, comment d (1965)). Nevertheless, for the purpose of demurrer in this case, the Court finds that since "reasonable men may disagree as to whether defendant's conduct was extreme and outrageous," the question presented is for a jury to determine. *See Womack,* 215 Va. at 342.

In *Russo,* the Virginia Supreme Court described a higher pleading requirement for cases alleging intentional infliction of emotional distress than in cases alleging mere negligence. 241 Va. at 28. Whereas an allegation of "negligence" is "sufficient without specifying the particulars" in a negligence case, a claim of intentional infliction of emotional distress requires that "a plaintiff must allege all facts necessary to establish" the cause of action. *Id.* (*quoting Ely v. Whitlock,* 238 Va. 670, 677 (1989)). In *Russo,* the court sustained a demurrer where the plaintiff alleged "that she was nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable to concentrate at work." *Id.* The court noted that "there is no claim ... that she had any objective physical injury caused by the

stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income." *Id.* Plaintiffs note that three Justices dissented in *Russo*, arguing that an allegation of "stress and its physical symptoms" is sufficient at the demurrer stage and that "in certain instances, physical injury is not an element required to establish the tort of intentional infliction of emotional distress." *Id.* at 30 (Justice Hassell with whom Justice Stephenson and Justice Lacy join, dissenting) (*citing Naccash v. Burger*, 223 Va. 406, 415-16 (1982); *Womack*, 215 Va. at 342.) However, exceptions to the physical injury rule of *Hughes v. Moore*, 214 Va. 27 (1973), are unusual, and the Virginia Supreme Court has explicitly stated that *Naccash* was unique and "confined to its particular facts." *Myseros v. Sissler*, 239 Va. 8, 9, n. 2 (1990); *accord Bulala v. Boyd*, 239 Va. 218, 226, n. 1 (1990).

Nevertheless, the Court finds that even under the heightened pleading standard of the majority in *Russo*, plaintiffs have alleged sufficient injury, including "objective physical injury," to state a cause of action under Virginia law. Defendants' demurrer is overruled.

## B. *Plaintiffs' Claim for Gross Insult*

Plaintiffs cite no Virginia authority recognizing a tort of "gross insult" where no insulting words have been alleged, and the Court is aware of none. Defendants' demurrer is sustained.

## C. *Plaintiffs' Claim for Vicarious Liability*

Defendant Food Lion, Inc., asserts that it cannot be held liable for the acts of its employee, Pierre Gardner, because these acts were not within the scope of his employment. Scope of employment is a term of art with a specialized meaning in agency law. Generally, an act is within the scope of employment in Virginia if:

(1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employers business, "and did not arise wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account." *Broaddus v. Standard Drug Co.*, 211 Va. 645, 653 (1971); *Cary v. Hotel Rueger, Inc.*, 195 Va. 980, 984 (1954); *Tri-State Coach Corp. v.*

*Walsh*, 188 Va. 299, 307 (1948); *Davis v. Merrill*, 133 Va. 69, 630-31 (1922).

*Kensington Associates v. West*, 234 Va. 430, 432 (1987). However, it must be understood that "the doctrine's primary focus is on whether the activity that gave rise to the tortious act was within or without the agent's scope of employment," not on the specific tortious act. *Commercial Business Systems v. BellSouth*, 249 Va. 39, 44 (1995). Thus:

the test of liability of the master for the tortious act of the servant is not whether the tortious act itself is a transaction within the ordinary course of the business of the master, or within the scope of the servant's authority, but whether the service itself, in which the tortious act was done, was within the ordinary course of such business.

*Id*. Virginia adopts the "modern view" with regard to vicarious liability for intentional torts in which "the wilfulness or wrongful motive which moves an employee to commit an act which causes injury to a third person does not of itself excuse the employer's liability therefor." *Id*. at 45. In *BellSouth*, the Court observed:

Unquestionably, Waldrop's conduct was outrageous and violative of his employer's rules. His motive was personal — to advance his self-interest, rather than the interest of BellSouth. And yet, Waldrop's willful and malicious acts were committed while Waldrop was performing his duties as BellSouth's contract negotiator and administrator and in the execution of the services for which he was employed.

We hold, therefore, that the evidence presents a jury issue whether Waldrop acted within the scope of his employment when he committed the wrongful acts.

*Id*. Thus, the fact that Mr. Gardner's motive in allegedly observing the plaintiffs was personal and this specific behavior unapproved by Food Lion is not dispositive. The question is not whether Mr. Gardner was authorized to observe the plaintiffs but whether this act and his position above the women's restroom could be deemed incident to his duty to clean the trash out from above the men's restrooms.

In *Tri-State Coach*, the court stated that "if the agent steps aside from the principal's business, for however short a time, to do acts not connected with

such business, the relation of agency and the agent is for that time suspended, and the agent is not acting within the scope of his employment." 188 Va. at 308. However, the court also noted that "[t]his principle is well-established, but the exact line of demarcation between what acts are within the scope of employment and what are not is, at times, difficult of ascertainment. The inferences to be drawn from the facts proved are often within the province of jury." *Id.*

The Virginia Supreme Court has said "it is well settled that when an agency relationship has been proven, the burden is upon the principal to show that the agent was not acting within the scope of his authority when he committed the acts complained of, and, if the evidence leaves the question in doubt, it becomes an issue for determination by a jury." 249 Va. at 43 (*citing United Brotherhood v. Humphreys*, 203 Va. 781 (1962), *cert. denied* 371 U.S. 954 (1963)). Moreover, "when the undisputed evidence shows that an employee's deviation from his employer's business is slight and not unusual, or, on the other hand, great and unusual, a court shall determine, as a matter of law, whether the employee was acting in the scope of his employment. When, however, the evidence places the case between these two extremes, the issue is for a jury." *Kensington*, 234 Va. at 433. In a recent case considering a demurrer, the Supreme Court noted that "at this stage of the proceedings, there simply are not sufficient facts which would permit us to hold, as a matter of law, that the defendant has met its burden of showing that its employee was not acting within the scope of his employment." *Plummer v. Center Psychiatrist, Ltd,* 252 Va. 233 (1996).

As in *Plummer*, the facts in this case appear insufficient at this stage of the proceeding to permit a holding as a matter of law that Defendant Food Lion, Inc., has met its burden of showing that Mr. Gardner's position above the women's restroom marked a deviation so great and unusual from his duty in cleaning above the men's restroom that it was not incident to this service and therefore not within the scope of his employment. Defendants' demurrer is overruled.